COSMOS SEIDEL *ads.* CARL PESCHKAW.

1. In procuring an order to hold to bail, it is not necessary that the affidavit should be made before the judge or commissioner who makes the order; the affidavit may be made before any person authorized to administer such an oath.

2. Under the act of March 10th, 1853, (*Nix. Dig.* 132, *pl.* 57,) an affidavit to hold to bail may be made in a foreign country before a consul of the United States.

3. If an agent, who is authorized to accept for his principal, appropriate the avails of the acceptances to his own use, he is liable on an implied contract for money had and received.

4. Where an agent is intrusted with goods, to be used in the business of his principal, or where he has in his hands blank acceptances, to be filled up and used as required in the business of his principal, in divers sums to a certain aggregate amount, and he fills up the acceptances to a much larger amount than authorized, and appropriates the goods or the avails of the acceptances to his own use, it is a fraud upon his principal, for which he may be held to bail.

5. An affidavit, to hold an agent to bail for misappropriating the avails of acceptances, stated the number of bills, by whom drawn, to whose order, and how endorsed, by whom accepted, the amount of each, and when they matured, respectively, but did not state the precise date of the bills—*held,* that the description was sufficient.

6. The affidavit also charged that the principal intrusted and delivered to the agent certain goods, consisting of woolen fabrics and yarns, to be manufactured by the defendant for the benefit and use of the deponent, and that he also intrusted and delivered to the defendant dye-stuffs and other ingredients to be used by the defendant in the manufacture of the said articles or materials to the amount of 32,000 florins and 10 kreutzers, at the twenty florin standard—*held*, that the affidavit did not sufficiently describe the particulars of this part of the demand.

Argued before Justices HAINES, CLAWSON and VAN-DYKE.

*Lyons*, for defendant.

*Williams*, for plaintiff.

The opinion of the court was delivered by

HAINES, J.  Cosmos Seidel, the defendant above named, being in custody on a *capias ad respondendum*, issued on an order for bail, in the sum of thirty-four thousand nine hundred and ninety-five dollars and seventy-two cents, made by one of the justices of this court, motion, on his behalf, is made to discharge him on common bail.

The ground of the motion is the want of competent proof to justify the order for bail.

The objections are of two classes: the one class, to the form of the proof, and the other to its substance.

Of those submitted, as to the formality, it will be proper to notice—

*First.* The objection that the proof was not made before the officer who made the order.

This objection, if true in fact, would be well taken, for the statute expressly provides that the justice or commissioner before whom the proof is made shall make the order to hold to bail.

But to make proof before the justice or commissioner does not require that the affidavits should be made and sworn to before him.  That may be done before any person authorized to administer such an oath.  The affidavit,

Seidel v. Peschkaw.

when so made and laid before the justice or commissioner, constitutes the proof; and, if sufficient in substance, will authorize the making of the order.

That such is the proper construction of the statute, is also shown by the practice of this court, familiar to every practitioner. Of the cases reported, it will be sufficient to refer to that of *Hill et al.* v. *Hunt et al., Spencer* 476, in which the affidavits were made and *exhibited* to a justice of the Supreme Court, and to that of *Vankirk* ads. *Staats,* 4. *Zab.* 122, in which the affidavits were *produced* to a commissioner.

Another objection to the affidavit of Peschkaw is, that it was not made before a person having competent authority to administer such an oath.

It purports to have been made at the city of Vienna, in the empire of Austria, before Edward C. Stiles, the consul of the United States at that place, tested by his signature and the consulate seal.

The objection is, that a consul of the United States has no authority to administer an oath.

The act of 10th March, 1853, (*Nix. Dig.* 132, *pl.* 57,) authorizes the administration of an oath or affirmation to hold to bail, by " any ambassador, public minister, charge of affairs, or *other representative* of the United States, for the time being, at any foreign court or government."

The question presented is, whether a consul of the United States at a foreign court or government is a representative of the United States.

A consul is a mercantile agent of the sovereignty by which he is appointed to protect the commercial interests of its citizens or subjects in a foreign state. By virtue of his office, he is clothed only with authority for commercial purposes. He is not to be considered as a minister or diplomatic agent of his government, intrusted with authority to represent it in negotiations with foreign states, or to vindicate its prerogatives. 1 *Kent's Com.* 43; 3 *Wheaton* 445, *In re The Annie.*

He has not the immunities of an ambassador, but in civil and in criminal cases is subject to the local laws, in the same manner as other foreign residents owing temporary allegiance to the state to which he is accredited.

But consuls are agents of their governments; and, in the United States, it belongs exclusively to the president, by and with the advice and consent of the senate, to appoint consular officers to such places as he and they may deem to be meet. They are officers created by the constitution and law of nations, and not by act of congress. 7 *Opinion on the Constitution* 242.

The persons so appointed are responsible for their official deportment to the United States, and are required to enter into bonds, with sureties for the faithful discharge of their duties. For any neglect or malfeasance in office they are liable to indictment for the offence, and also, upon their official bonds, for all damages caused thereby, to be sued for in the name of the United States, to the use of the persons injured.

Their compensation is by salary, paid by the United States, or by fees, according to the rates established by act of congress.

A consul must be recognized by the government to which he is sent, and authorized to exercise his official functions within its territory. His *exequatur*, granting such authority, may be withdrawn, and his functions suspended at the pleasure of the executive of that government. He is not, in general, responsible personally for contracts made in his official capacity on account of the government he repesents. *Jones* v. *Le Tombe*, 3 *Dallas* 384.

In his official acts he represents the United States.

On the arrival of a vessel from the United States at his port, the commander is required to deposit with the consul his sea letter and register, under a penalty of $500, and they are to be returned to him only on his producing to the consul his clearance from the proper officer of the

port, and on compliance with the provisions of the acts regulating the conduct of such officers in foreign ports. *Act of Congress, 28th February*, 1803; *Harrison* v. *Vose*, 9 *Howard* 372.

He is to protect the seamen of the United States discharged in a foreign port, and receive from the master three months' wages, besides the wages due at the time of their discharge, to provide for the return home of such as desire to return, and for the support of such as may be destitute.

He is to hear complaints of seamen against the master. He is to reclaim deserters, and to inquire into the seaworthiness of ships. He is to take measures for the preservation of stranded vessels of the United States and their cargoes. He is to take possession of the personal effects of such citizens of the United States as shall die within his consulate unrepresented, and to administer the same by paying the local debts, and remitting the residue to the United States treasury. All these, and other official acts, are performed, as the officer of the United States, for the protection of the persons and property of the citizens of the United States. In them all, he represents the government by which he is invested with authority to perform them. He is the instrument through whom the United States extends protection to such of its citizens; and as an emblem of his authority, and of so much of the sovereignty of his government, he is permitted to raise its national flag over his consulate residence.

If, then, he is appointed and paid by the United States— is responsible to that government for his official conduct; if he is recognized by the government to which he is sent as the officer of the United States; if he acts on behalf of the United States; and his official acts relate only to the persons and property of citizens of the United States, he must be regarded as a representative of the United States within the meaning of our statute, and so have

authority to administer an oath to be used in the courts of this state. We must therefore conclude that a consul has authority to administer an oath, and that the objections to the formality of the affidavits are not sustained.

*Second.* To the substance of the affidavits it is objected that they do not disclose any contract between the parties; that if the defendant, being the agent of the plaintiff, converted to his own use the property and securities intrusted to him by the plaintiff, it is a tort, and not a contract, so as to be the subject of an action of *assumpsit.*

But it is clear that a party may waive the tort, and seek his redress through the contract implied from the unlawful conversion. If the defendant appropriated the avails of the acceptances, he is liable, on a contract implied, for money had and received.

Again, it is objected that no case of fraud is disclosed to justify an order for bail. But if it be true, as disclosed by the affidavit of Peschkaw, that the defendant was acting as his agent, and was by him intrusted with goods to be used in his business, and he converted those goods to his own use, it was clearly fraudulent; and if, as such agent, intrusted with blank acceptances to be filled up as required in the business, for the use of the principal in divers sums to a certain aggregate amount, and the agent filled up the acceptances to a much larger amount, and then appropriated the avails of all to his own use, and that Peschkaw was compelled to pay the amount, it was not only a gross fraud, but a high misdemeanor, for which the defendant ought to be held to bail.

It is further objected, that the nature and particulars of the demand are not sufficiently specified. As to the acceptances or bills of exchange, the affidavit of the plaintiff specifies that they were thirty-one in number, drawn by the defendant to his own order, and endorsed by him, upon the plaintiff and accepted by him. It states the amount, in florins, for which they were severally filled up, and the time of their maturity respectively. This is a

sufficient specification of the nature and of the particulars of this part of the demand.

No precise date of the bills is set forth ; the time of their issue may be gathered from the statements of the transactions between the parties, but the precise time is not stated. That is not indispensable to the sufficiency of the affidavit nor to the validity of the bills. There may have been no dates, and if so, it could not have been set out as descriptive of the bills.

As to the goods charged, the affidavit of the plaintiff specifies that he intrusted and delivered to the defendant certain goods, consisting of woolen fabrics and yarns, to be manufactured by the defendant for the benefit and use of the deponent, and that he also intrusted and delivered to the defendant dye-stuffs and other ingredients, to be used by the defendant in the manufacture of the said articles or materials, to the amount of thirty-two thousand florins and ten kreutzers, at the twenty florin standard.

This may be a specification of the nature of this part of the demand, but not of its particulars, and is not sufficient, under the circumstances of this case, to justify an order for bail.

The motion to discharge on common bail is denied, but the bail is reduced to the amount of the bills of exchange, $17,591.88.