ARNOLD JORDAN, PROSECUTOR, v. ALBERT H. HOFFMAN
AND ALFRED GOLDSTEIN, RESPONDENTS.

Submitted October 7, 1940—Decided March 11, 1941.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and
PERSKIE.

For the prosecutor, *Eichman & Seiden* (*Julius J. Seiden,*
of counsel).

For the respondents, *Max L. Rosenstein* (*George H. Rosenstein,* of counsel).

The opinion of the court was delivered by

PERSKIE, J.   The single question requiring decision, on
the merits, is the sufficiency of the affidavit upon which the
*capias ad respondendum* was issued.

The affidavit, executed on January 5th, 1939, by Albert
H. Hoffman, had annexed thereto an agreement between the

prosecutor and respondents dated April 6th, 1937. By the terms of this agreement, respondents, as consignors, were to deliver to prosecutor "up to fifteen hundred (1,500) pair of shoes bearing the trade name of 'Friendly Shoes' * * * to be kept there on consignment for the purpose of sale at retail trade." Respondents were to retain title to said shoes until sold, by prosecutor, to third parties. Prosecutor, as consignee of the shoes, was required, by the terms of the agreement, to keep the shoes separated from his other stock in trade. Prosecutor also agreed to hold separate and apart from any moneys belonging to him, a portion of the proceeds of each pair of shoes sold, equal to the costs price of that pair, plus fifteen cents. He was to deposit this money semi-weekly in a designated account in the Hudson County National Bank in Jersey City.

The affidavit stated that in pursuance of this agreement a quantity of shoes was delivered to prosecutor and that he made sales and deposited four checks in the designated account in the aggregate sum of $1,272.65. Each and every one of these checks, affiant states, was returned unpaid because of insufficient funds and no part of the moneys was turned over or paid to the respondents.

On July 23d, 1937, prosecutor filed a voluntary petition in bankruptcy and subsequently an order was made for the receiver to turn over to respondents the remaining shoes which were still on hand in the premises of prosecutor. Affiant, however, stated that a quantity of the "Friendly Shoes" and of "Jarman-Custom Shoes" had not been returned and that prosecutor failed and refused to turn them over. The total amount of the moneys unaccounted for by prosecutor was stated to be $2,053.20.

Accordingly, on January 28th, 1939, David M. Satz, a Supreme Court commissioner, ordered that Arnold Jordan, the prosecutor in this proceeding, be held to bail for the sum of $2,053.20 to answer unto Albert H. Hoffman and Alfred Goldstein, respondents here.

Respondents, thereupon, on February 7th, 1939, filed their complaint, as plaintiffs in an action at law in the New Jersey Supreme Court, seeking damages (a) in accordance with the

contract, (b) in accordance with a stated account, and (c) in accordance with the reasonable value of the shoes. Prosecutor, on February 15th, 1939, filed an answer denying each and every allegation of the complaint.

On June 28th, 1940, a substitution of attorneys for the prosecutor was entered into and on July 16th, 1940, prosecutor filed a notice of a motion to consider and determine the sufficiency in fact as well as in law, of the proofs upon which the order for bail was founded. On July 20th, 1940, an order was entered by Circuit Court Judge Caffrey, sitting as a Supreme Court commissioner, denying prosecutor's motion. Thereupon prosecutor, on August 16th, 1940, obtained a writ of *certiorari* to review the legality of the aforementioned order holding him to bail.

Respondents have filed a motion to dismiss the writ on the ground that the *ex parte* affidavits had spent their force and that the state of the case was incomplete.

It is true that prosecutor, not having taken any depositions in this proceeding, is precluded from resorting to the affidavits used in obtaining the writ of *certiorari*. For the evidential force of affidavits employed to obtain a rule to show cause or a writ of *certiorari* expires with the allowance of the rule or the writ, and the facts alleged therein can be brought before the court only by depositions taken on notice, or, perhaps, by stipulation. *Kantor* v. *Perth Amboy*, 122 *N. J. L.* 588; 7 *Atl. Rep.* (2d) 403; *Hunterdon County National Bank* v. *Packer*, 121 *N. J. L.* 24, 25; 1 *Atl. Rep.* (2d) 17; *affirmed*, 122 *N. J. L.* 377; 5 *Atl. Rep.* (2d) 694; *Paterson Stove Repair Co.* v. *Ritzer*, 123 *N. J. L.* 145; 8 *Atl. Rep.* (2d) 133. But prosecutor is not here attempting to use the affidavits on which the writ was allowed. That affidavit is not made to appear. He challenges the legality, the sufficiency of the affidavit upon which the *capias* and order to hold to bail was issued. That affidavit is properly before us as part of the record certified by the clerk. Thus in case No. 289 the motion to dismiss the writ of *certiorari* is denied.

1. Did prosecutor on the facts of this case waive his right, as it is argued, to make application to have determined the legality of the order upon which he was held to bail?

Prosecutor did not choose, as he might have chosen within thirty days after his arrest, to make application for an order to take testimony as to the truth of the proofs upon which the order to hold him to bail was made, even though he had given bail. *R. S.* 2:27-78. Instead he chose to file an answer to the complaint at law against him and some eighteen months thereafter invoked the provisions of *R. S.* 2:27-77 to have determined the legality of the challenged order. Notwithstanding the fact that the statute invoked contains no limitation as to time within which the provisions may be invoked, it may be conceded that by his appearance in obedience to the *capias* and the giving of bail, prosecutor waived all defects, at least those which are formal, either in the process or in the service. *Logan* v. *Lawshe,* 62 *N. J. L.* 567, 571; 41 *Atl. Rep.* 751. And it may perhaps well be when in addition to his appearance entered and to his giving of bail, a defendant, as prosecutor here, files an answer to the suit against him, that it is then too late for him to make application to have determined the asserted illegality of the *capias* on the ground of insufficiency of the proofs to support the order for it. *Cf. Watson* v. *Noblett,* 65 *N. J. L.* 506, 509; 47 *Atl. Rep.* 438; *Ferenga* v. *Moskovitz,* 1 *N. J. Mis. R.* 169, 170; 130 *Atl. Rep.* 814. Be that as it may, we prefer to rest our determination of this cause upon the merits as set forth in the posed question first stated as requiring decision herein. But we can not pass *sub silentio* (the point was neither raised nor argued), the question as to the jurisdiction of the Circuit Court judge in the premises. We know of no statute law, nor of any rule of court, nor of any other authority which authorizes a Circuit Court judge, sitting as a Supreme Court commissioner, to exercise the powers conferred by *R. S.* 2:27-77 and 2:27-78 in a cause pending in this court. Here again, pursuant to our determination to dispose of this cause on the merits, we shall do so, as if the application to set aside the order for bail were made directly to this court.

2. We think the facts contained in respondent's affidavit justified the issuance of the *capias* and the order to hold to bail, since they fall within the purview of the statute permitting the issuance of a *capias* in a contract action upon

proof that "defendant fraudulently contracted the debt or incurred the demand." *R. S.* 2:27-72(d).

The words "fraudulently contracted the debt" have been construed by us many times. We have held, for example, that the mere breach of a promise, without more, is insufficient to justify the issuance of a *capias* (*Carroll* v. *Mickens,* 7 *N. J. Mis. R.* 409; 145 *Atl. Rep.* 620), but that there must be shown to have existed at the time of the making of the contract an intent to defraud (*Brune* v. *Miskind,* 11 *N. J. Mis. R.* 924; 168 *Atl. Rep.* 832), or a preconceived intention, at time of the purchase of goods, not to pay for them (*Kryn* v. *Kahn,* 54 *Atl. Rep.* 870, 871). The issuance of a *capias* under the provision of the statute is not, however, limited merely to situations where fraud is shown to exist at the time of the making of the contract. Rather is the language broad enough to include those cases where, as here, the resultant fraud, although not proved to have existed at the inception of the contract, flows from the contract and becomes a component part thereof. Thus a defendant was deemed properly held to bail on the ground of fraud where by affidavit it appeared that he, as agent of the plaintiff, converted to his own use certain goods entrusted to him, filled in blank acceptances to a larger amount than authorized, and appropriated the avails of these acceptances to himself. *Seidel* v. *Peschkaw,* 27 *N. J. L.* 427.

While the earlier case of *Vankirk* ads. *Staats,* 24 *N. J. L.* 121, indicates a contrary view, we now adopt as law the reasoning of the Seidel case, *supra,* supported by the *dictum* enunciated by Mr. Justice Parker in *Carroll* v. *Mickens, supra,* wherein he stated that if the suit had involved a fraudulent conversion by a defendant of an automobile entrusted to him for sale, a *capias* might have issued. This view finds further support by analogy to cases of seduction upon breach of promise of marriage wherein the court has held that the seduction becomes a component part of the original promise of marriage. *Perry* v. *Orr,* 35 *Id.* 295; *Polhemus* v. *Melides,* 96 *Id.* 105; 113 *Atl. Rep.* 593. See *R. S.* 2:39A-1.

Prosecutor, in the instant case, failed to perform his agree-

ment by keeping separate the shoes and the proceeds thereof which belonged to respondents. Having fraudulently appropriated the same to his own use, the fraud may be considered as a component part of the original promise through which it became effective. For this, he was properly held to bail.

3. We have considered all other points argued and hold them to be without merit.

The writ is, therefore, dismissed with costs.