86 N.J. Super. 65 (1964)
205 A.2d 904
ALLIED FINANCIAL CORP., A CORPORATION OF THE STATE OF NEW YORK, PLAINTIFF-RESPONDENT,
v.
STEEL PANEL SALES CORP., ET AL., DEFENDANTS, AND FINANCIAL ASSOCIATES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, AND LEONARD WILLETT, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 28, 1964.
Decided December 28, 1964.
*68 Before Judges CONFORD, KILKENNY and LEWIS.
*69 Mr. Howard M. Nashel argued the cause for appellants (Messrs. Platoff, Platoff & Heftler, attorneys).
Mr. Albert G. Besser argued the cause for respondent (Messrs. Hannoch, Weisman, Myers, Stern & Besser, attorneys).
The opinion of the court was delivered by CONFORD, S.J.A.D.
This is an appeal, by prior leave of this court granted, from the denial by the Law Division of a motion by defendants Financial Associates, Inc. ("Financial" hereinafter), and Leonard Willett, president of Financial, to quash a writ of attachment issued against their several properties.
We have first to pass upon a motion by plaintiff to dismiss the appeal as moot on the ground that less than four months after the attachment a statutory receiver was appointed by the Chancery Division for Financial, thereby rendering the attachment void under N.J.S.A. 14:14-25. It is obvious, however, that this would not render the attachment moot as to the individual defendant, Willett. Insofar as Financial is concerned, it appears that it has, along with Willett, filed a counterclaim against plaintiff claiming damages by reason of a wrongful attachment. Since resolution of this appeal will or may bear upon the proper disposition of the counterclaim, and since plaintiff failed to bring on this motion until long after both parties had filed their briefs in this court, we consider the appeal not moot as to Financial and conclude that it would be desirable for us to proceed to determine the merits thereof as to that defendant as well as in relation to Willett.
As required by the revised attachment practice, R.R. 4:77-3 (effective January 2, 1963), this action was begun by the filing of a complaint, and the writ was issued by the court on the basis of a verifying affidavit purportedly constituting "prima facie proof of the cause of action alleged" in the complaint "and of the grounds for issuance of the writ." R.R. *70 4:77-7. The statutory grounds for the claim of right to attachment in this case are that the action is "founded upon contract, express or implied, due to plaintiff from defendant," and that "defendant fraudulently contracted the debt or incurred the demand." A capias may issue in such case, N.J.S. 2A:15-42(d), and the Attachment Act provides that a writ of attachment may issue where "the facts would entitle plaintiff to an order of arrest before judgment in a civil action," except that "in actions founded upon a tort, an attachment shall not issue against a corporation upon which a summons can be served in this state," N.J.S. 2A:26-2. Financial is a New Jersey corporation and Willett a resident of this State.
The problem, then, before the trial court on the motion to quash was, ostensibly, whether the complaint and affidavits showed an action founded upon contract and that the defendants fraudulently contracted the debt or demand.
The complaint is in three counts. The first count charges a wrongful conspiracy by the above named defendants and defendant Steel Panel Sales Corp. ("Steel Panel" hereinafter) to defraud plaintiff by inducing it to advance money to Steel Panel on the security of false and worthless accounts receivable of that firm. It is asserted that Steel Panel's president came to plaintiff on May 13, 1963 to request financing needed by Steel Panel because its current factor, Financial, "could not extend further credit because of a limitation of funds." On May 14, 1963 Willett "confirmed to plaintiff" the foregoing information and stated his company "would cooperate with any new factor," that Financial had verified 90% of the accounts receivable securing past advances to Steel Panel, and that they were in good order. On May 22, 1963 Willett "conferred with plaintiff," restated that the accounts were good, and discussed an arrangement whereby plaintiff would take over the financing of Steel Panel. On May 23, 1963 Steel Panel requested and received an immediate advance of $5,944.88 from plaintiff, assigning to it certain worthless accounts receivable and "executing an agreement with plaintiff on that date." On May 28, 1963 defendants requested plaintiff *71 to advance $50,000 to Steel Panel immediately to be used by it to "reduce its indebtedness to Financial," and plaintiff delivered its check for that sum to Steel Panel, accepting as security therefor the assignment of certain accounts receivable supposedly on the books of Steel Panel and "then held by Financial, as security for its previous loans to Steel Panel." The latter corporation endorsed the check and delivered it to Financial, which cashed it. The first count concludes with a recital that "as a result of the aforesaid wrongful conspiracy" plaintiff has suffered damages of $58,604.01 and requests damages and punitive damages.
The second and third counts are headed, "As to Defendants Financial and Willett." The second count repeats the allegations of the first count and recites that Financial and Willett represented to plaintiff that the accounts receivable previously held by Financial on the Steel Panel account were in good order and current and had been verified, audited and confirmed by personal visits to the account debtors. These representations were made, intending that plaintiff rely thereon in advancing moneys to Steel Panel. Plaintiff did rely; the representations were knowingly false and the accounts "fictitious or worthless." By reason of the false representations and plaintiff's reliance plaintiff was damaged in the sum of $58,604.01, and it sought damages and punitive damages.
The third count charges negligence by Financial and Willett in the making of the aforesaid representations of the value of the Steel Panel accounts receivable and alleges consequent damages to plaintiff as a result of such negligence by defendants. Again, damages and punitive damages are sought.
The verifying affidavit of Natelson, treasurer of plaintiff, is annexed to the complaint. This provides factual detail for the assertions in the complaint. Natelson had a telephone conversation with Willett on May 14, 1963 wherein Willett made the statements as to the verification and confirmation of the Steel Panel accounts. On May 22, 1963 Natelson and Willett met in the offices of Financial in Newark "to review and consummate the arrangements pursuant to which plaintiff *72 did take over the Steel Panel account from Financial." Willett made detailed representations to Natelson concerning the background of the business association between Steel Panel and Financial. The affidavit mentions five payments to Steel Panel by plaintiff. As to each of four of these, in each case less than $6000, the payment is stated to have been made "to Steel Panel against assignment of paper from (or "against paper of") the latter to the plaintiff." As to the fifth payment, the Natelson affidavit describes it thus:
"On May 28, 1963  $50,000.00 to Steel Panel in the form of a check payable to the latter but immediately endorsed by the latter and delivered to Financial Associates against assignment of accounts receivable held prior thereto by Financial Associates, reassigned by the latter to Steel Panel, and then immediately reassigned again by Steel Panel to plaintiff, * * *."
The remainder of the Natelson verifying affidavit details the proofs of the falsity of the representations by Willett as to the soundness of the Steel Panel accounts.
On motion by defendants to quash the writ, supported by an affidavit of Willett admitting conferences with Natelson but denying the representations alleged in the complaint and verifying affidavit, plaintiff submitted an "answering affidavit" by Natelson to the following effect:
"That he makes this affidavit in order to supplement his previous affidavit; as a result of the discussions and negotiations with Mr. Willett previously referred to, we agreed that Allied would take over a substantial portion of the Steel Panel accounts, the exact amount of which was to be resolved at a later date, upon reassignment to Allied by Financial Associates of a sufficient amount of the Steel Panel accounts which it then held or by the delivering of new accounts to us directly from Steel Panel. Accordingly, the advances described in Paragraph 5 of my previous affidavit were made by checks issued and delivered by us in New York to Steel Panel's representative against simultaneous delivery to us in New York of either new paper or paper previously assigned to Financial Associates and then reassigned to us. As part of the agreement between Financial Associates, Allied and Steel Panel, Financial released Steel Panel from the latter's contractual obligation to factor its accounts only through Financial Associates, Inc.
I am directing our attorneys to attach a copy of this letter as Exhibit A hereto."
*73 The letter referred to as Exhibit "A" is as follows:
"Dear Mr. Natelson:
As per our conversation this will authorize you to enter into an Accounts Receivable Contract with Steel Panel Sales Corp., notwithstanding Paragraph 12[*] of our contract with Steel Panel Sales Corp. dated September 11, 1962.
 Very truly yours,
 FINANCIAL ASSOCIATES, INC.,
 L.E. WILLETT,
 President."
The trial judge, in deciding the motion to quash adversely to defendants Financial and Willett, stated that in reading the complaint and the affidavits supporting it he inferred "that there was set forth a contractual relationship between the parties"; and further, that the complaint and affidavits made out a prima facie case that defendants contracted the debt fraudulently or incurred the demand fraudulently. He thereupon determined that there was a right of attachment under the statute relied upon, whether or not "some kind of a tort" was also alleged "in connection with the contract."

I.
Without any further exploration at the moment of the legal problem here presented insofar as the defendant Financial is concerned, it is at once perfectly apparent that there is nowhere in the complaint or affidavits any semblance of a claim that defendant Willett was ever personally in any contractual relationship with plaintiff. Throughout the papers on the motion it is plain that he acted solely as an officer of Financial, not as an independent contracting party vis-a-vis either Allied or Steel Panel, and plaintiff has not argued otherwise on this appeal. Even in the supplemental Natelson affidavit, apparently drawn with an eye to strengthening the claim in its aspect as one upon contract, the reference is only to an "agreement *74 between Financial Associates, Allied and Steel Panel." The action is not, therefore, shown to be founded on contract insofar as concerns the defendant Willett.
As to plaintiff's argument that Willett and Financial can both be held in on attachment by reason of the "contract implied in law" for money had and received as a result of the fraud, we observe, first, that none of the papers before us charge or show that Willett individually received anything. See Rock-Ola Mfg. Corp. v. Music & Television Corp., 339 Mass. 416, 159 N.E.2d 417 (Sup. Jud. Ct. 1959). Aside from that difficulty with the argument, the lack of basic legal merit therein as to both defendants is demonstrated in II, hereinafter. Clearly, the attachment must be set aside insofar as concerns the defendant Willett whose asserted offense against plaintiff is purely fraud and deceit, a tort, and in no sense whatever a contractual default or a default arising out of a contractual relationship between plaintiff and that defendant. Essential Const. Co. v. Royal Concrete Fireproofers, 84 N.J. Super. 289 (App. Div. 1964). Attachment does not lie against a resident defendant for the tort of fraud and deceit.

II.
In approaching the question whether the action against Financial is one founded on contract, as required by the statute (in view of Financial's being a New Jersey corporation amenable to service here), it is necessary to study our case law dealing with the added and presently material statutory requirement that the defendant be shown to have "fraudulently contracted the debt or incurred the demand." Contrary to the law in some other states construing similar language, it need not be shown that the original consensual agreement was contemporaneous with the fraudulent design of the defendant, as might appear from a cursory reading of the statutory language and as was held in some of our earlier cases. See the recent full discussion of the development of the law on this point by Judge Lewis in Hamilton v. Schwadron, 82 N.J. *75 Super. 493 (App. Div. 1964) (a capias case, but involving the same statute, N.J.S. 2A:15-42(d)).
The rationale by which the concept of a fraudulently contracted debt is now deemed to comprehend, for attachment and capias purposes, a fraud, misappropriation or conversion growing out of, though later than the inception of, a contractual relationship between the defendant and the party aggrieved, is stated in Jordan v. Hoffman, 126 N.J.L. 100, 104 (Sup. Ct. 1941) (a capias case not involving a strict fraud but the failure of a consignee to set aside proceeds of sale for consignor as agreed). "[T]he resultant fraud, although not proved to have existed at the inception of the contract, flows from the contract and becomes a component part thereof." As to the facts in the case there involved, the court said, "the fraud may be considered as a component part of the original promise through which it became effective." Id., at p. 105. But what is of present significance in relation to every such case in our books cited by plaintiff is that there was an original contractual relationship, actual, not fictional or constructive, between the plaintiff and defendant in the attachment or capias action. See Seidel v. Peschkaw, 27 N.J.L. 427 (Sup. Ct. 1859); Williams & Davis v. Davis, 105 N.J.L. 542 (Sup. Ct. 1929) (semble: p. 543); Jordan v. Hoffman, and Hamilton v. Schwadron, both supra. The case of Westcott v. Sharp, 50 N.J.L. 392 (Sup. Ct. 1888), is not in point in this specific context, as that was an attachment action against a nonresident debtor (see p. 392), not, so far as appears, one based upon a fraudulently contracted debt or demand.
We do not accept the argument of plaintiff that the defrauding by a defendant of one with whom he never had any contractual relationship whatever, express or implied in fact, will nevertheless ground a capias, or an attachment under the Capias Act provisions in reference to an action founded on contract where the debt is fraudulently incurred. We have recently held that the statutory provisions here under construction do not apply where a defendant converts the property *76 of one with whom he has never had contractual relations. Essential Const. Co. v. Royal Concrete Fireproofers, supra.
Plaintiff cites authority outside New Jersey for the proposition that a plaintiff with a tort cause of action for fraud may sue in attachment on statutory contract grounds by "waiving the tort" and "suing in contract" on the theory of the "implied contract" to return the moneys fraudulently received. See Annotation, 12 A.L.R.2d 787 (1950). But statutory language varies widely and influences decisions. Further, in practically all of the out-of-state instances cited, the plaintiff and defendant are seen to have stood in some sort of real contractual relationship in the first instance and the "waived" tort to have arisen therefrom. See, e.g., Cleveland v. San Antonio Bldg. and L. Ass'n, 148 Tex. 211, 223 S.W.2d 226, 12 A.L.R.2d 781 (Tex. S.Ct. 1949); McCall v. Superior Court, 1 Cal.2d 527, 36 P.2d 642, 95 A.L.R. 1019 (Sup. Ct. 1934). The results in such cases do not differ essentially from that obtained by applying the "fraud-flowing-from-the-contract" concept in this State, exemplified by Jordan v. Hoffman, supra, wherein a contractual relationship in fact existed between the parties. And while the early case of Seidel v. Peschkaw, supra, does advert to the notion of waiving the tort and seeking redress through the "contract implied from the unlawful conversion" (27 N.J.L., at p. 432), the modern Jordan v. Hoffman decision, supra, approves Seidel, not on the tort-waiver theory but rather on that of the fraud flowing from the pre-existent actual contractual relationship. And that, rather than the tort-waiver theory, is the rationale by which we now sanction attachment or capias sought under the contract-induced-by-fraud provision of the act where the contract antedates the fraud. See Hamilton v. Schwadron, supra (82 N.J. Super., at p. 497).
The statutory reference to "an action founded upon contract, express or implied," cannot, within a proper understanding of the legal meaning of the emphasized language, include the fictional notion of a "contract" implied in law, generally subsumed under the concept of quasi-contract. *77 "Contracts * * * are often classified in accordance with the kind of evidence given to establish them. If it is the evidence of words, they are called express contracts. If it is the evidence of acts, they are called implied contracts. But as shown above, both are inferences from the facts proved." (Emphasis by author) Corbin, "Waiver of Tort and Suit in Assumpsit," 19 Yale L.J. 221, 222-23 (1910). In either case, the distinctive feature of the transaction is the agreement of the parties. Ibid. Quasi-contract, sometimes loosely called contract implied in law, is not contract at all, but a legal concept rationalizing a sanction to prevent unjust enrichment, to which there was early accommodation of the remedial framework of the common-law assumpsit counts. Id., at p. 225-6. "The distinction between a real contract, express or implied, and a quasi-contract is to be found in the presence or absence of the element of agreement. The forms of action available for their enforcement are the same." Id., at p. 223.
Clearly recognizing and applying the distinctions just stated is the opinion of the Supreme Court in St. Paul Fire, etc., Co. v. Indemnity Ins. Co. of No. America, 32 N.J. 17, 22-23 (1960). Mr. Justice Schettino there (at p. 23) quotes from the earlier expression in Borough of West Caldwell v. Borough of Caldwell, 26 N.J. 9, 29 (1958), to the effect that, "The true implied contract consists of an obligation `arising from mutual agreement and intent to promise but where the agreement and promise have not been expressed in words,' * * *." See also Deskovick v. Porzio, 78 N.J. Super. 82, 86-87 (App. Div. 1963).
Professor Corbin points out, in the Yale Law Journal article cited above, that while the law for certain specific purposes has permitted injured parties to "waive the tort" and sue in assumpsit, much "unreasonable conflict, bad logic, and bad law" has arisen as a result, op. cit., supra, at p. 224, and he emphasizes that when such an attempt is made in relation to specific legislation it should be administered "with a decent amount of respect for the actual meaning of the words used by the legislature." Id., at p. 239.
*78 It is of further interest, in relation to this argument of plaintiff, which logically would involve approval of the grant of capias or attachment in any case of fraud or conversion, even by a theretofore stranger to plaintiff, and whether or not defendant is a nonresident or foreign corporation, that the Supreme Court declined to accept a 1962 rules revision recommendation of its Special Committee on Attachment which would have gone that far. See Report of Committee, 85 N.J.L.J. 165, 171, and proposed Rule 4:77-1(a)(4).
We thus conclude that in order for attachment to issue on the basis of N.J.S. 2A:15-42 (the Capias Act) as incorporated by reference into the attachment statute, in particular relation to an "action founded upon contract, express or implied," defendant having "fraudulently contracted the debt or incurred the demand," the parties must be shown to have been, at some time in the course of their dealings leading to the fraudulent conduct, in actual contractual relationship with each other, express or implied.
We proceed to a consideration of whether the requisite facts are adequately shown by the papers before the trial court on the motion.

III.
It is well established that the Attachment Act is to be liberally construed for the protection of all creditors and claimants. N.J.S. 2A:26-1; Mueller v. Seaboard Commercial Corp., 5 N.J. 28, 39 (1950); Whiteman Food Products Co. v. Alimentari, 31 N.J. Super. 277 (App. Div. 1954). Under the current attachment rules plaintiff may, on motion to vacate the levy, submit "additional affidavits or other proof to sustain the writ or levy." R.R. 4:77-16(b). But the burden of proof is rested upon plaintiff and "[a]ll questions of fact and law shall be determined by the court without a jury." It is clear to us that the last stated requirements apply to the establishment of facts jurisdictional to the availability of the remedy, e.g., non-residence of a defendant where that is a requirement, *79 not to facts concerning the existence vel non of a cause of action. The latter issue, we take it, is, as before the 1963 revision of the attachment rules, left ordinarily to the trial of the action, and, for purposes of defeating a pretrial motion to quash the writ it suffices that a prima facie showing is made out by plaintiff's affidavits. Tanner Associates, Inc. v. Ciraldo, 33 N.J. 51, 64 (1960); Original R. & R. Pickle Works v. G. Arrigoni & C., etc., 28 N.J. Super. 405, 409 (App. Div. 1953), certification denied 14 N.J. 352 (1954).
There is nothing in the revised attachment rules or the circumstances attending the revision to cause one to conclude that any change in the Tanner Associates principle, mentioned above, was intended by the Supreme Court. The report to the court of the Special Committee on Attachment stated in its introduction: "No radical change in practice is included in these recommendations." Report, op. cit., supra (85 N.J.L.J., at p. 165). See also note on proposed R.R. 4:77-16, id., at p. 172.
It seems to us that the factual issue whether plaintiff was in a contractual relationship with Financial out of which the fraud arose, in the sense of our adjudicated cases, is a matter going to the existence vel non of a cause of action rather than of jurisdictional facts. The factual issue was therefore not required to have been determined by the court for purposes of disposition of defendants' motion under R.R. 4:77-16(b) and (c). The court was but required to have found from plaintiff's papers on the motion the existence of prima facie proof of the contractual relationship and the fraud.
We are satisfied that such a prima facie case was made out.
As to the asserted fraud, there is concededly no question as to the sufficiency of the allegations. But in regard to the contractual relationship, defendants argue that (1) plaintiff's affidavits fail to state the terms of any contract between plaintiff and Financial (or with Willett), and (2) since the complaint itself is obviously framed solely in tort, the writ cannot be saved by affidavits purporting to prove a contract, even assuming that the affidavits can be read to make such proof.
*80 It may well be conceded that plaintiff did not, when framing its complaint and verifying affidavit, appreciate the substantive necessity of alleging a contractual relationship when suing in attachment against a domestic corporation and resident of this State, and that it therefore drew the complaint to state, essentially, a fraud and deceit cause of action with subsidiary counts for conspiracy and negligence. But it is not in the spirit of present-day adjective law in this jurisdiction to permit a right, here the remedy of attachment, to become lost to the party because of misconceptions in pleading theory, if the hard core of the pertinent fact-situation is consonant with the adjudicated law giving the remedy.
As already seen, the cases hold, in effect, that attachment lies under N.J.S. 2A:26-2 and 2A:15-42(d) where one in an existing contractual relationship with another defrauds the other at some time in the course of that relationship. The gravamen of the ensuing cause of action, as clearly seen from the cases discussed above, need not consist of a breach of the contract between the parties in the ordinary sense; it may be constituted by fraudulent treatment of the plaintiff by the other party during the relationship. In other words, the essence of the action may well be fraud, rather than the ordinary simple failure by the defendant to perform his contractual undertaking. It therefore appears to us that it is not here fatal to plaintiff's recourse to attachment that the gravamen of the complaint as framed is defendant's asserted fraudulent despoilment of plaintiff. We find nothing in the report of the Special Committee on Attachment to the Supreme Court, already cited above, to indicate that the requirement for simultaneous filing of complaint and verification was intended to make the remedy more technically difficult or vulnerable on motion than theretofore. What must appear, however, somewhere in plaintiff's proofs, along with the facts of fraud, is prima facie indication that it was in a contractual relationship with the defendant. The present complaint should be permitted to be amended for that purpose if the *81 affidavits suffice, R.R. 4:77-16(b), as we hold hereinafter that they do.
The answering affidavit by Natelson of plaintiff corporation required consideration by the court on the motion to quash, ibid., and we have concluded that it sufficed, prima facie, when taken with the original verifying affidavit, to show that plaintiff, Steel Panel and Financial were parties to an agreement of a contractual nature. The affidavit is by a layman, and it therefore was not requisite that it state the postulated contract with the skill of a legal draftsman. Read with the liberality which we think is called for on such a motion, and taken with the verifying affidavit by the same affiant, it may fairly be paraphrased as alleging the following. Plaintiff, desiring to assume the position of factor of Steel Panel's accounts receivable but not having the right to do so unless Financial surrendered its existing exclusive contractual right to factor for Steel Panel, and Financial being willing to surrender that right in return for plaintiff's entry into such a relationship with Steel Panel and its advancing enough funds to permit discharge of Financial's claims against Steel Panel, plaintiff and Financial agreed with each other, and with Steel Panel, that they would each render the stipulated performance in return for that of the others and would consummate the tripartite undertaking in the manner that it was actually done as shown by Natelson's verifying affidavit.
It results from the foregoing conclusions that the trial court was right in sustaining the attachment as to defendant Financial.
However, for the reasons stated above, the court erred in not vacating the writ as against defendant Willett. The amended complaint filed by plaintiff pending appeal and adding a fourth count against both defendants "on an implied contract for moneys had and received * * *" (on the theory of "waiving the tort" and "suing in contract") cannot help plaintiff, and particularly not as against defendant Willett, for reasons already stated herein.
Order modified; the cause is remanded to the Law Division for further proceedings not inconsistent with this opinion.
NOTES
[*] Which gave Financial exclusive rights to factor Steel Panel accounts.