PAULINE RUBENSTEIN, PLAINTIFF, AND STANLEY WOLF, PLAINTIFF-RESPONDENT, v. ELIZABETH LOPSEVICH, ALSO KNOWN AS ELIZABETH YUMPLOT, DEFENDANT-APPELLANT, AND EDNA YUMPLOT, ALSO KNOWN AS EDNA YOUNG, DEFENDANT.

. Argued March 13, 1950—Decided April 10, 1950.

*Mr. Joseph J. DeLuccia* argued the cause for the appellant.

*Mr. Peter Cohn* argued the cause for the respondent.

The opinion of the court was delivered by .

OLIPHANT, J. This appeal is from a judgment of the Passaic County Court entered in favor of the plaintiff on the defendant's counterclaim. While the appeal was to the Superior Court, Appellate Division, it was certified here on our own motion.

The dispositive question in the case and the only one raised on this appeal is—where a woman relying upon a promise of marriage performs the duties of a housekeeper for the

promisor at his request and thereafter the promisor fails to abide by his promise, may the woman recover *quasi ex contractu* for the reasonable value of her services?

Plaintiff Wolf, who lived in Paterson, in May, 1947, proposed to defendant Lopsevich, who lived in Brooklyn, New York, that if she would move to his house and help him fix it up he would marry her as soon as it was in a liveable condition. It was to be a merging of the households until marriage. Relying on this promise defendant quit her job and in June, 1947, moved to plaintiff's home and brought with her her grown daughter. She also brought her furniture with her. She proceeded to help fix up the home, performed the household chores, contributed money for food and bought a stove. In October there was a falling out between the parties, plaintiff told defendant he was *not going to marry her* and to move out. This she did not do, allegedly because she could not locate rooms elsewhere, and things continued on much the same basis as before, defendant performing the duties of housekeeper and plaintiff providing the house and $20 a week for food. This lasted until March, 1948, when plaintiff again ordered defendant to leave and stopped giving her the $20 weekly for household expenses. The following month defendant procured a job in a factory and ceased to act as housekeeper, though she and her daughter continued to live at plaintiff's home until December, 1948, when they found rooms elsewhere and moved out.

In the meantime, in October, 1948, the plaintiff Wolf and his landlady Pauline Rubenstein, the other plaintiff herein, had filed a complaint in ejectment against the defendant Lopsevich and her daughter Edna Yumplot. In this action the defendant Lopsevich, the appellant herein, counterclaimed against the plaintiff Wolf, the respondent herein, for the reasonable value of her services as a housekeeper and for money spent for food and equipment. As the previous dates indicate, at the time of the trial on May 16, 1949, the action in ejectment was no longer necessary, the defendants having moved and it was abandoned. The plaintiff Wolf did not appear, either in person or by counsel. The case proceeded

and the court, after hearing the defendant's testimony with respect to the counterclaim, ordered judgment entered for the plaintiff.

The defendant seeks to escape the operation of *R. S.* 2:39A–1, the "Heart Balm" Act which abolished suits for breach of promise to marry by suing on the theory of *quasi* contract, rather than for breach of promise to marry. While it is clear that an action prosecuted under the latter theory would be barred by the statute there can be no objection to a suit based in *quasi* contract, provided the elements necessary for recovery thereunder can be established without relying upon the promise to marry for support.

Appellant relies on *Glazer v. Klughaupt,* 116 *N. J. L.* 507, 510 (*E. & A.* 1936), wherein a stenographer was allowed to recover the salary which her employer had retained on the promise that he would marry her, which promise was subsequently breached. The court there held that "The right of action which appellant seeks to enforce is one arising from the contract of hire, and is not, in its essence, a cause of action for damages based upon the breach of the claimed marriage contract." In that case there was an express contract of hire while in the instant case there was not. The test is as set forth in that case, can the action be supported without reliance upon the promise to marry? The answer to this question in this case is obviously no. Eliminating the contemplated marriage, the defendant expected to get nothing and the plaintiff expected to give nothing for the household services rendered.

The true consideration for any agreement between the parties was Wolf's promise to marry the defendant. The record discloses he never promised to pay for the services or material furnished by defendant, nor do the circumstances disclose any intention between the parties to rebut the inference that payment was not contemplated.

A promise to pay for services is not implied by the law where it may reasonably be inferred from the circumstances and conduct of the parties that no payment was to be made for them. Thus it has been said that,

"\* \* \* where a woman renders services to a man under promise and an expectation of marriage with him, but without expectation of compensation in money or money's worth, she cannot, on the breach of the promise of marriage, recover the value of such services \* \* \* by way of an action, for the breach of the contract to marry."

58 *Am. Jur.*, § 8, *p.* 517. See also *Lafontain v. Hayhurst;* 36 *A.* 623 *(Sup. Jud. Ct. of Maine* 1896); *Newhall v. Knowles,* 28 *R. I.* 348, 67 *A.* 365 *(Sup. Ct.* 1907); *Note,* 54 *A. L. R.* 548, 561.

█ In such a case as the instant one there is no ground for applying the doctrine of implied contract, which is defined as: "A promise to pay the reasonable value of services performed by one person for another, although there is no express agreement as to the compensation, will be implied where the circumstances warrant an inference of a promise to pay for such services, as where the conduct of the person for whom the work was done is such as to justify an understanding by the person performing the work that the former intended to pay for it." 58 *Am. Jur.*, § 3, *p.* 512.

While the liability that arises from an obligation implied by law does not depend upon the intention or expressions of the parties, nevertheless the natural inference from the circumstances herein presented is that no obligation arose on the part of Wolf to make payment. *Cf. Rabinowitz v. Mass. Bonding & Insurance Co.,* 119 *N. J. L.* 552 *(E. & A.* 1938); 12 *Am. Jur.*, § 6, *p.* 502 *et seq.*

For the defendant to have recovered on her counterclaim it was not incumbent upon her to prove all the elements of a contract, all that was necessary was for her to prove some facts from which the court could imply that the services rendered by her were not intended to be gratuitous. This she could not do without resort to the promise of marriage. However the defendant's contentions are viewed they all stem from that promise. The clear intent of the statute to abolish all recovery for breach of promise to marry cannot be avoided by such a subterfuge as is here attempted. *Thibault v. Lalumiere,* 60 *N. E.* 2d 349 *(Mass.* 1945).

The judgment appealed from is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For reversal*—None.