## LAW AND EQUITY COURT OF THE CITY OF RICHMOND

Alfred J. O'Neill

v.

Lillian M. Ramsey

April 14, 1972

By JUDGE A. CHRISTIAN COMPTON

Enclosed you will find a copy of the order entered today adjudging that the plaintiff is entitled to the possession of the premises at 6107 Glenway Drive, that he is not entitled to recover on his claim for rent, and that the defendant's counterclaim is denied.

Having ruled on the first two items aforesaid following the hearing of the evidence, the sole issue before the court now is whether or not the defendant is entitled to recover damages of the plaintiff upon the theory of implied contract. The court has concluded that her claim must fail.

Upon the several disputed questions of fact on this issue, the court finds the following to be the facts, and in so doing adopts, in the main, the defendant's testimony and that of her witnesses.

The defendant met the plaintiff in 1957 when she was living on West Leigh Street and at that time she and the plaintiff, who was then married, started "going together," seeing each other every night and every weekend. The plaintiff did not tell the defendant that he was married, and this relationship continued over the years when in 1964 the plaintiff bought the property in question, which is located in South Richmond, and the plaintiff persuaded the defendant to move from her home in North Richmond so that she could be close to him and his work.

Although she did not want to move to that side of town, the defendant agreed to move in 1964 pursuant to an agreement between the parties, which was stated by the defendant to be as follows:

> I didn't want to move to that side of town, but we had plans to be married. He told me if I would wait until he got straightened out and his children got grown we would be married. If I move in and if I take care of the property, it was agreed that I could have it, but if I found anyone I could move out and it was his [the plaintiff's]. If he found anyone else, it was mine if I would take care of it.

Following the defendant's move, the relationship continued, and during the period from 1964 through 1971 the defendant expended funds for shrubs and lawn care at the premises; paid to have the lawn mowed; painted the inside and outside of the house; fenced the yard; personally laid tile in the house and hung wallpaper; had carpentry repairs done to the house; spent weekends with the plaintiff at his cottage on Gwynns Island and supplied the food there; assisted the plaintiff in working on the upkeep of a boat; cooked, washed, ironed and mended clothes for the plaintiff and others in his family; did all of the Christmas shopping; got licenses for his boats and car; and accompanied him on vacations.

During this period the plaintiff gave the defendant an automobile and the defendant lived in the premises without paying any rent, the court having found, as stated, that there was no agreement that the defendant should pay rent.

Although the defendant knew that the plaintiff had children, she did not know that he was married during this period of time and that his wife had been "in and out of the hospital" for about fifteen years before the plaintiff was divorced from her in 1971.

In July of 1971 the defendant was called by the plaintiff's present wife, who stated that she had married the plaintiff on July 9, 1971. The defendant was unaware of the plaintiff s relationship with anyone else since

the defendant had spent a weekend with the plaintiff on his boat during the last part of June of that year.

Thereafter, the plaintiff decided to sell the property in question and this litigation ensued when the defendant refused to move from the premises. Following the institution of this action in the Civil Court on October 12, 1971, the defendant became obligated in the amount of $985.00 for the installation of a new furnace in the premises, the work thereon having been completed on January 22, 1972, as shown by defendant's exhibit 2. The pay or quit notice was served on the defendant on September 20, 1971.

It is clear that in her counterclaim the defendant seeks to escape the operation of Code § 20-37.2 by suing on the theory of implied contract. The aforesaid code section provides in part that "Notwithstanding any other provision of law to the contrary, no civil action shall lie or be maintained in this State for . . . breach of promise of marriage . . . upon which a cause of action arose or occurred on or after June twenty-eight, nineteen hundred sixty-eight . . . ."

While the defendant argues that this is not an action for breach of promise to marry, her own testimony is to the contrary. At one point, she stated that "this is an action for breach of promise for marriage." She further testified that "he promised to marry me and I thought all my services were part of the 'deal.' I did these things because I loved him . . . I wouldn't do these things for someone I didn't love and intend to marry . . . I wouldn't do these things to no other house unless I loved someone and planned to marry him."

It is generally held that any action based upon or arising out of a breach of contract to marry is barred under a statute abolishing such action, irrespective of the nature of the damages sought and the grounds alleged for such recovery. 12 Am. Jur. 2d *Breach of Promise*, sect. 19, p. 718.

The case of *Rubenstein, et al.* v. *Lopsevich*, 72 A.2d 518 (N.J. 1950), is very much in point. In that case, under a similar New Jersey statute a woman was denied recovery in an action based on *quasi* contract for the reasonable value of her services as a housekeeper and for money expended on food where the sole return that she originally expected for these services was that the

other party would marry her. There, the suit began as an action by the man against the woman in ejectment and the woman filed a counterclaim seeking recovery in implied contract for the reasonable value of her services performed as aforesaid. At the trial, since the woman had already moved from the premises, prosecution of the action in ejectment was no longer necessary. The case proceeded with respect to the woman's counterclaim and the trial court denied recovery, which denial was affirmed by the Supreme Court of New Jersey. The reasoning applied in that case and the comments of the court therein are instructive upon the issue here. There, as here, the defendant sought to escape the operation of the New Jersey statute which abolished suits for breach of promise to marry by suing on the theory of implied contract rather than upon the breach of promise to marry. Such a suit under the latter theory would not be barred by such a statute provided the elements necessary for recovery thereunder could be established without relying upon the promise to marry for support. 72 A.2d at 520.

Here, as in the New Jersey case, the defendant sought to rely on a case dealing with an express contract of hire. *Hendrickson v. Meredith*, 161 Va. 193 (1933). Here, as there, the true consideration for any agreement between the parties was the promise of marriage. The evidence fails to show that the plaintiff ever promised to pay for the services rendered or the material furnished here by the defendant. "A promise to pay for services is not implied by the law where it may reasonably be inferred from the circumstances and conduct of the parties that no payment was to be made for them." 72 A.2d at 520.

In this case, as stated, the entire arrangement had as its basis a contemplated marriage between these parties. The defendant herself makes as the sole foundation of all of her actions her affection for the plaintiff and her desire eventually to marry him. While the evidence clearly shows that her confidence in the apparent intentions of the plaintiff was misplaced, there was no express agreement that she would be compensated for favors nor do the circumstances warrant an inference of a promise to pay for such services and, therefore, no obligation arose on the part of O'Neill to make payment.

For the defendant to have recovered on her counter-claim, it was only necessary for her to prove some facts from which the court could imply that the services rendered by her were not intended to be gratuitous, and she could not do this without resorting to the promise of marriage. "However the defendant's contentions are viewed, they all stem from that promise. The clear intent of the statute to abolish all recoveries for breach of promise to marry cannot be avoided by such a subterfuge as is here attempted." *Ibid.*, page 521.

The item claimed for renovation of the furnace falls in a bit different category. The defendant was clearly a volunteer as to that expenditure since the obligation was incurred after her alleged cause of action arose in July of 1971, after the pay or quit notice had been served and after this litigation had commenced.

For the reasons set out above, the court denies the defendant's counterclaim.