164 N.J. Super. 162 (1978)
395 A.2d 913
IRMA KOZLOWSKI, PLAINTIFF,
v.
THADDEUS KOZLOWSKI, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided July 12, 1978.
*166 Mr. Michael F. Markensohn, attorney for plaintiff.
Messrs. Slavitt, Fish & Cowen, attorneys for defendant (Mr. Ben J. Slavitt appearing).
POLOW, J.S.C.
In this case the court must resolve whether plaintiff Irma Kozlowski, who cohabited with defendant Thaddeus Kozlowski for 15 years without the benefit *167 of marriage, may succeed on any or all of the following demands: (1) a share of assets accumulated by defendant during those years; (2) the reasonable value of services she claims to have rendered for defendant's benefit during that time; (3) future support for the rest of her life from the date of their separation. Defendant resists all such demands, relying primarily on N.J.S.A. 37:1-10 which invalidates common law marriages contracted after December 1, 1939, and N.J.S.A. 2A:23-1 et seq. which bans any suit based upon breach of promise to marry.
Most of the significant facts are substantially undisputed. In 1962 plaintiff, a Polish immigrant with little knowledge of the English language and little social contact outside of her own family and ethnic community, met defendant, a personable, sophisticated, apparently well-to-do business man who immediately exhibited an amorous interest in her. She was then 48 years old, married and mother of two children. He was six years younger than she, also married and father of two children. He quickly expressed his love for her and before long insisted that they leave their families and set up a new household together. After about four months of vacillating and agonizing, she capitulated. Together the loving couple moved into an apartment and later a house, in which they lived in what may be fairly characterized as the illicit equivalent of marital bliss. Three of the four children of their prior marriages joined them during the early years of their new relationship and grew up in an atmosphere not dissimilar to that of a normal family unit. The last child reached adulthood and left the household in about 1970, after which defendant sold the original house and purchased a smaller one for himself and plaintiff alone. The parties lived together for a total of 15 years, continuously except for two brief separations.
His wealth appears to have increased during that 15-year cohabitation, but he kept his business affairs to himself. Title to all of his assets, including the residences, remained solely in his own name. She knew little about his business *168 affairs, was unaware of the extent of his assets and income and was completely dependent upon him for all of her needs, maintenance and support. She had no possessions other than clothing, personal effects and his gifts of jewelry and furs. In addition, he provided support and maintenance for all three children in the household, hers and his own.
She, on her part, provided substantial services, including housekeeping, shopping, acting as mother to the children, escorting and accompanying defendant as he desired, and serving as hostess when necessary for his customers and business associates. The latter took her to be his wife although there is no doubt that relatives and close friends on both sides were fully aware of the true relationship of the parties. Interestingly, however, her use of the name Kozlowski provides no evidence that would be of assistance in resolving this controversy. By remarkable coincidence, her first husband had precisely the same surname though unrelated to defendant. Her continued use of the name Kozlowski was, therefore, entirely proper and provides no clue as to the intentions of the parties.
She asked him about marriage from time to time. During the early years his responses were evasive. In or about 1968 the parties had a serious disagreement and separated for a week or so. Before plaintiff left, defendant had her sign a release in consideration for which she acknowledged receipt of the sum of $5,000 in full satisfaction of all claims she might have against him. That consideration consisted of $2,000 in cash delivered to plaintiff when she signed the release and cancellation of an obligation of plaintiff's daughter to return $3,000 previously advanced by defendant for her educational expenses.
Within a week after that separation defendant sought out plaintiff and pleaded for her to return. He insisted that they would be happy together for the rest of their lives, that he needed her, that he would take care of her and provide for her if she would only come back and resume her *169 functions in the household as she had performed them in the past.
I find as a fact that at this juncture she again asked him about the prospects of marriage. He was no longer evasive  he made it clear that he did not intend to marry her nor did he indicate any desire to free himself from his preexisting marriage. On the contrary, he responded to her marital suggestions by declaring that a marriage license is only a piece of paper and that "it's what is in the heart that really counts."
She moved back into the house they had previously shared and resumed the same relationship as theretofore, but did so knowing that he refused to take steps toward marriage. She proceeded to again perform services of value to defendant, including housekeeping, cooking, food shopping, serving as his escort and companion and entertaining his business associates and customers as he desired. The parties, it may be assumed, also indulged in a meretricious relationship.
In July 1977 it became obvious that defendant had another romantic interest, no longer loved plaintiff and wanted to be rid of her. She was crushed and hurt and left in a huff. Without her knowledge he had recently instituted a suit for divorce against his wife of so many years, and a divorce judgment was ultimately rendered dissolving that marriage, after the parties hereto separated. He has since married; the bride is at least 30 years younger than plaintiff.
I am satisfied, based upon the evidence produced, that Kozlowski originally promised to divorce his wife in order to be free to marry plaintiff. He went even further: he sought out plaintiff's then husband and demanded that he permit or arrange for a divorce for her. In fact, a divorce was obtained for plaintiff within the early years of the relationship between the parties hereto. On the other hand, defendant's then existing marriage was not dissolved until 1977 after he and plaintiff had separated and severed their relationship. No explanation for the delay in attempting to dissolve his prior marriage was offered.
*170 The long-range social consequences of the "new morality," its relaxed moral standards and the substantial increase in cohabitation by unmarried couples has been the subject of considerable, comment and concern in recent years. The plight of one of the parties rejected after many years of cohabitation, without assets and with limited or no income, is also attracting attention, particularly since the decision by the Supreme Court of California in Marvin v. Marvin, 18 Cal.3d 660, 134 Cal. Rptr. 815, 557 P.2d 106 (1976). See 90 Harv. L. Rev. 1708 (1977); Note, "Beyond Marvin: A Proposal for Quasi-Spousal Support," 30 Stan. L. Rev. 359 (1978); 23 Wayne L. Rev. 1305 (1977); Kay & Amyx, Marvin v. Marvin: Preserving the Options," 65 Calif. L. Rev. 937 (1977); Mitchelson & Glucksman, "Equal Protection for Unmarried Cohabitors: An Insider's Look at Marvin v. Marvin, 5 Pepperdine L. Rev. 283 (1978); 62 Minn. L. Rev. 449 (1978).
The dilemma may be simply stated: Is there any remedy available under our law for a woman who has devoted 15 or more years living with a man, for whom she provided the necessary household services and emotional support to permit him to successfully pursue his business career and for whom she has performed housekeeping, cleaning and shoping services, run the household, raised the children, her own as well as his, all without benefit of marriage; a woman who was literally forced out of the household with no ongoing support or wherewithal for her survival?
Plaintiff here claims that she is entitled to a share of the assets accumulated during their time together, based on partnership and joint venture theories; she further claims the value of services rendered, based upon express, implied or quasi-contract, and finally she claims the value of support for the rest of her life, also based upon express, implied or quasi-contract.

*171 I

The Claim for a Share of the Accumulated Assets
Plaintiff first claims a share of the accumulated assets on the theory that they had formed a partnership. The Uniform Partnership Law, N.J.S.A. 42:1-1 et seq., defines a partnership as an association of two or more persons to carry on as co-owners a business for profit. The statute then goes on to establish rules for determining the existence of a partnership. N.J.S.A. 42:1-7. The elements of a partnership were clearly set forth in Fenwick v. U.C.C. of N.J., 133 N.J.L. 295 (E. & A. 1945). They include agreement, sharing profits and losses, ownership and control of the partnerships property and business, community of power, rights upon dissolution and the conduct of the parties towards third persons, among others. Though these requirements may be reduced as regards married persons for income tax purposes, Farris v. Farris Engineering Corp., 7 N.J. 487 (1951), they must be met by the complainant here if she is to prevail on this theory of relief. Lang v. Hexter, 137 N.J. Eq. 100 (Ch. 1945), aff'd 138 N.J. Eq. 478 (E. & A. 1946).
The elements of a joint venture are virtually identical with those required for a partnership. Wittner v. Metzger, 72 N.J. Super. 438 (App. Div. 1962), cert. den. 37 N.J. 228 (1962), citing 2 Williston, Contracts (3 ed. 1959), § 318A at 556 et seq. Furthermore, the rules of law which apply to partners apply also to joint ventures. 68th St. Apts., Inc. v. Lauricella, 142 N.J. Super. 546, 559 (Law Div. 1976), aff'd 150 N.J. Super. 47 (App. Div. 1977).
Thus, even though both partnership and joint venture may be implied from the conduct of the parties, Jackson v. Hooper, 76 N.J. Eq. 185 (Ch. 1909), I am perfectly satisfied that none of the required elements of either are present in this case as regards defendant's business and real estate transactions. No evidence was presented that plaintiff intended or exercised control over his business, *172 expected to share in the profits and losses of those financial enterprises or entered into any kind of agreement with the defendant as regards those matters. Accordingly, this basis of relief must fail.

II

The Claim for Payment for Services Rendered
Plaintiff next claims compensation for the services she rendered during the period of their cohabitation. Based upon the evidence presented in this case I have no difficulty finding that plaintiff did provide substantial services, valuable to defendant.
Our case law supports the equitable principle that unjust enrichment of one party at the expense of the other will not be tolerated. The acceptance of valuable services performed under circumstances justifying the conclusion that it would be inequitable to allow the recipient to enjoy the benefit without compensation therefore supports relief by way of quantum meruit, quasi-contract, constructive trust or implied contract, as may be appropriate if no express contract exists. Our rules permit the employment within the pleadings of any or, in the alternative, all of these theories of relief. R. 4:5-6 and R. 4:5-7; see also, Power-Matics, Inc. v. Ligotti, 79 N.J. Super. 294, 304 (App. Div. 1963).
Defendant opposes all such theories of relief by contending that the cause of action itself contravenes New Jersey's "Heart Balm" Act, N.J.S.A. 2A:23-1 et seq., which specifically bars any suit based upon a breach of promise to marry. Its passage represents a strong public policy against such suits. Calcin v. Milburn, 176 F. Supp. 946 (D.C.N.J. 1959). The primary aim of the act was to do away with excessive claims, coercive by their very nature and, frequently, fraudulent in character. Morris v. MacNab, 25 N.J. 271 (1957).
The cause of action stated by plaintiff claims rights arising outside the purview of the "Heart Balm" Act which *173 would, if supported by the proofs, justify reliance on an obligation not based upon a promise to marry. Morris v. MacNab, supra; Grobart v. Grobart, 5 N.J. 161 (1950); Beberman v. Segal, 6 N.J. Super. 472 (Law Div. 1949).
Nor does the apparent illicit relationship engaged in by the parties in itself bar relief in this matter. Persons who may be involved in immoral acts are not automatically barred from contracting amongst themselves or with others as regards those aspects of their behavior or property which are severable from their immoral acts. Glazer v. Klughaupt, 116 N.J.L. 507 (E. & A. 1936). The court will not assist them in the advancement of immoral intentions, but they are not denied all access to judicial intervention where the rights asserted do not directly depend upon such illicit behavior. Thus, one who expressly contracts to receive compensation for domestic services such as housekeeping, cleaning and cooking should not be denied the right to enforce that contract even though the parties may also engage in a meretricious relationship. Glazer v. Klughaupt, supra; accord, Marvin v. Marvin, supra. Any other result would reward one of the parties thereto by relieving him of an otherwise enforceable contractual obligation at the expense of the party providing the services.
The meretricious relationship implicit in the circumstances of this case is not countenanced in this jurisdiction and hence it cannot suffice as consideration to support a contractual obligation. However, the existence of such a relationship will not in itself bar enforcement where there exists separate, valid consideration and the obligation has in other respects been legally contracted. See Caribe Hilton Hotel v. Toland, 63 N.J. 301 (1973), where the court enforced a gambling debt even though violative of our public policy because it was otherwise validly contracted.
Similarly, quasi-contractual remedies should be available where the circumstances justify compensation for valuable household services in the absence of an express *174 agreement. A quasi-contract is not a control at all, but a legal concept rationalizing a sanction to prevent unjust enrichment based upon the equitable principle that whatsoever it is certain that a man ought to do, that the law supposes him to have promised to do. St. Paul Fire, etc., Co. v. Indemnity Ins. Co. of No. America, 32 N.J. 17 (1960); Deskovick v. Porzio, 78 N.J. Super. 82 (App. Div. 1963). A contract, on the other hand, whether express or implied, has as its distinguishing characteristic agreement and promise, by words if express, by acts if implied. Allied Financial Corp. v. Steel Panel Sales Corp., 86 N.J. Super. 65, 77 (App. Div. 1964).
Whether relief is sought on the basis of contract or quasi-contract, neither a promise to marry nor meretricious services may supply the consideration. Rubenstein v. Lopsevich, 4 N.J. 282 (1950); Glazer v. Klughaupt, supra. The determination as to what constitutes the consideration must be based upon the facts and circumstances of the particular case.
In Glazer v. Klughaupt, supra, the court found that where the plaintiff had entered into a contract to perform secretarial and stenographic services she was entitled to that part of her wages which was put in reserve for her and which she was to have received when the defendant/employer married her. Thus, even though the arrangement involved a promise to marry, the claim for wages properly rested on the contract to hire and was not excluded by the "Heart Balm" Act.
Quite a different situation existed in Rubenstein v. Lopsevich, supra. Plaintiff, who lived in Paterson, proposed to defendant, who lived in Brooklyn, that if she moved into his house and helped him fix it up, he would marry her as soon as the house became liveable. Until the marriage they were to merge their households. In reliance thereon she quit her job and with her daughter moved into plaintiff's home. She helped fix up the place, performed household *175 chores and contributed toward food expenses. Within five months they had a falling out, plaintiff told her he would not marry her and ordered her out. She refused to leave, claiming inability to find other quarters, and she continued to perform housekeeping duties. Plaintiff contributed $20 a week toward food expenses. After five more months plaintiff again ordered her out and refused to provide further contributions to run the household. Defendant thereupon obtained a job and stayed several more months until she found other rooms and moved out.
In Rubenstein the alleged contract was breached after only five months and the entire relationship lasted no more than 17 months. Defendant had received some benefit as had plaintiff. The Supreme Court did not find sufficient evidence of unjust enrichment to support relief to defendant. Accordingly, the court denied her claim because she was unable to provide facts from which the court could imply that the services rendered by her were not intended to be gratuitous.
The present case is distinguishable from Rubenstein in that the evidence contains factual support for the conclusion that the services performed by plaintiff were not intended to be gratuitous. She was provided with a weekly stipend, received allowances for her medical and clothing needs and was afforded vacations paid for by defendant. It is clear that plaintiff expected, and defendant intended, at least that much in return for the benefits she conferred. Thus there was consideration and the services were not gratuitous. Whether a quasi-contractual basis for relief would have been available to plaintiff absent express agreement in this case need not be determined as I find there existed an express contract between the parties as of the reconciliation in 1968.
The facts of this case require consideration of plaintiff's and defendant's cohabitation in two separate periods divided in time by plaintiff's execution of the release. As to the first period between 1962 and 1968, the release *176 signed by plaintiff fully satisfied any rights she might have had thereunder.
When the parties resumed their relationship after the signing of the release it was with the express understanding that defendant did not intend to marry plaintiff. Accordingly, then, the "Heart Balm" Act is not applicable. The reconciliation was based upon an express agreement which specifically omitted any promise to marry.
However, her claim for services rendered during this second period was satisfied by the value of the weekly support, clothing, trips, vacations, medical benefits and jewelry defendant provided for her. I find there is no evidence to support, even impliedly, the conclusion that during the course of their cohabitation this plaintiff sought, demanded, expected or intended to get anything in addition to what she received, or that the parties intended any additional payment to plaintiff for services rendered before the parties separated.
Plaintiff's demand for damages based upon additional compensation due for services she rendered to defendant is accordingly denied.

III

The Claim for Future Support
One of the few factual disputes is defendant's denial of plaintiff's claim that he promised to take care of her for the rest of her life. He admits that when she agreed to return in 1968 he promised to provide reasonable, comfortable support, as he had provided in the past. He insists, however, that his promise to support was limited to such period as the parties should continue to live together, and any such obligation on his part was to terminate as soon as the relationship ceased.
I have considered the testimony of the parties and observed their demeanor on the witness stand, and am satisfied that plaintiff's version is the more credible. I find *177 that the proofs indicate that she asked him specifically about her financial situation should he predecease her, in response to which he assured her he would arrange to provide for her for the rest of her life. I am satisfied that defendant's present argument, that his obligation to provide for her was to cease if they separated, is an afterthought and was neither stated nor intended when the new agreement was reached in 1968.
Although the agreement was oral, it does not violate the statute of frauds, N.J.S.A. 25:1-5(c) or (e), which provides:

25:1-5. Promises or agreements not binding unless in writing
No action shall be brought upon any of the following agreements or promises, unless the agreement or promise, upon which such action shall be brought or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person thereunto by him lawfully authorized;
* * * * * * * *
c. An agreement made upon consideration of marriage;
* * * * * * * *
e. An agreement that is not to be performed within one year from the making thereof.
The consideration here for the services rendered was not marriage but compensation by way of support which plaintiff has already received and the promise of future support. In Eiseman v. Schneider, 60 N.J.L. 291 (Sup. Ct. 1897), the trial court allowed relief to be granted on an oral agreement made 20 years earlier between a man and his mother-in-law that in consideration of certain domestic services to be performed by her, he would support and maintain her during her lifetime. In the present case plaintiff performed the agreed-upon services for 15 years, giving up for that time all other potential avenues of pursuit of career or employment as well as other possible means of providing for her future support and retirement. She has foregone any chance to develop skills or to seek out opportunities which, in the revealing light of hindsight, may well have served her *178 better. She performed diligently and fully her part of the bargain for a significant period of her life. This court could not countenance the unconscionable result which would obtain should all relief be denied this plaintiff who was cast adrift at 63 years of age without means of support or assets, and with little hope of developing support opportunities. For the reasons stated in section II hereof, the contract is enforceable.
Nor does the time requirement of the statute of frauds bar enforcement of this oral agreement which would have terminated upon the death of either party. Deevy v. Porter, 11 N.J. 594 (1953); Eiseman v. Schneider, supra. As the court in Smith v. Balch, 89 N.J. Eq. 566 (E. & A. 1918), authoritatively held:
In order for this provision of the statute to apply it must appear that the parties intended when they made the contract that it should not be performed within the year. If this does not expressly or clearly appear, and the contract is one which, taking in consideration the subject-matter, may be performed within the year, the statute does not apply, although in fact a longer time was actually taken in performance.
Accordingly, an appropriate measure of relief will be awarded plaintiff on this claim. A preliminary determination of the damage caused to plaintiff was calculated based upon the present value of the reasonable annual support payable to plaintiff, computed by reference to the life expectancy tables contained in the Rules. Plaintiff has demanded further opportunity to present evidence because of certain limitations imposed during pre-trial discovery. A final determination of the amount of damages to be awarded will await a further plenary hearing.