THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT CESSNA, Defendant-Appellant.

Fifth District   No. 76-63

Opinion filed October 26, 1976.

C. Michael Witters, of Mt. Carmel, for appellant.

Richard S. Simpson, State's Attorney, of Lawrenceville (Bruce D. Irish, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

The defendant, Robert Cessna, was charged by complaints filed in the circuit court of Lawrence County, with adultery, fornication, and two separate charges of contributing to the sexual delinquency of a child, one of which was eventually dismissed by the court. Following a bench trial defendant was found guilty of the remaining charges. Defendant was sentenced to two years' probation for the offense of adultery and to 90 days' imprisonment and a fine of $250 for the offense of contributing to the sexual delinquency of a child. From these judgments defendant appeals. The record does not show the ultimate disposition of the fornication charge, which apparently was dismissed and no issue is raised on appeal concerning that charge.

On appeal, defendant contends: that he was not proved guilty beyond a reasonable doubt of contributing to the sexual delinquency of a child; that the State failed to prove that his conduct constituting adultery was open and notorious; and that both of these convictions were based on the same act.

The charges at issue both stem from the allegation that on or about October 12, 1974, defendant had sexual intercourse with Miss J. Milligan. The facts briefly stated are that during the time at issue defendant was married and was 23 years old. He had come from Indiana, where he had left his wife, and he was living at his mother's house (hereafter the Siegle's house). Miss J. Milligan, who was born on February 21, 1957, was 17 years old in October, 1974. At various times she resided at her sister's house, her her aunt's house, and a foster home. She testified that she had met defendant early in October, 1974, and had stayed at the Siegle's house on a number of occasions during that month. On these occasions she had slept with defendant and they had had sexual intercourse. She also testified that defendant had given her an engagement ring about a week after they first met. Other members of Milligan's family testified that she and defendant had been seen together. Milligan's father, the complainant, testified that an attorney had told him that defendant had

consulted the attorney about obtaining a divorce and marrying Milligan. Mr. Milligan stated that he based his allegations against defendant on a "look at her gut," referring apparently to a pregnancy.

Defendant's mother and stepfather testified that Milligan had stayed at their home for only two nights and that she had a bedroom separate from defendant's. Defendant denied having sexual intercourse with Milligan.

■■ In reviewing the record, we have kept in mind the principle as stated in *People v. Pointer*, 6 Ill. App. 3d 113, 118, 285 N.E.2d 171, 175:

"* * * a reviewing court is charged with a special duty to exercise utmost caution and circumspection in scrutinizing the sum and substance of the evidence upon which a conviction for a sex offense is predicated. This principle, of course, reflects judicial awareness that a female's accusation, often stemming from clandestine circumstances, is easily made, difficult to prove and ofttimes even more difficult to disprove."

Defendant's contention concerning his conviction for contributing to the sexual delinquency of a child is that it should be reversed since it is solely based on the testimony of Milligan which was neither corroborated nor clear and convincing. It is true that where such a conviction is based on the testimony of the victim the evidence must be corroborated or must be otherwise clear and convincing. (*People v. Ulrich*, 30 Ill. 2d 94, 195 N.E.2d 180.) The only testimony of Milligan in dispute concerns whether she and defendant had sexual intercourse with each other. We find her testimony to be clear and convincing. Milligan's testimony which was undisputed and corroborated establishes that she and defendant exhibited mutual feelings of affection during the period in question. On at least two occasions she had stayed at the Siegle's house overnight and while the Siegles slept downstairs, her bedroom was upstairs near defendant's bedroom. This evidence supports Milligan's disputed testimony. The trial court is in a superior position to judge the credibility of witnesses and to weigh their testimony. After a careful review of the record, we do not find the evidence so unsatisfactory or insufficient as to raise a reasonable doubt of defendant's guilt of contributing to the sexual delinquency of a child.

Defendant next contends that his conviction for adultery should be reversed because the State failed to prove that his behavior was "open and notorious."

Section 11—7 of the Criminal Code provides in part:

"Any person who cohabits or has sexual intercourse with another not his spouse commits adultery, if the behavior is open and notorious, and

(1) The person is married and the other person involved

in such intercourse is not his spouse. * * *." Ill. Rev. Stat. 1975, ch. 38, par. 11—7(a).

■■ Clearly the adulterous conduct proscribed by this provision is not that which is essentially private or discreet. (*People v. Potter*, 319 Ill. App. 409, 49 N.E.2d 307.) Behavior which is "open and notorious" by definition means that such behavior is prominent, conspicuous and generally known and recognized by the public. The prohibition of open and notorious adultery is meant to protect the public from conduct which disturbs the peace, tends to promote breaches of the peace, and openly flouts accepted standards of morality in the community. (See Ill. Ann. Stat., ch. 38, par. 11—1 *et seq.*, Committee Comments—1961, at 290 (Smith-Hurd 1972).) What is of marked interest is the scandalous effect of the behavior and its affront to public decency and the marital institution. Notoriety of the adultery must extend not only to the sexual intercourse or the cohabitation but also to the fact of the absence of a marital relationship between the parties where one party is known to be married. Ill. Ann. Stat., ch. 38, par. 11—7, Committee Comments—1961, at 425 (Smith-Hurd 1972).

In *People v. Potter*, 319 Ill. App. 409, 49 N.E.2d 307, the court, in affirming the defendant's conviction for having lived in an open state of adultery under a former statute, stated:

"Their immoral life was so brazen and notorious that every neighbor was cognizant of it. Their lustful and clandestine impulses had attained such an arrogant stage that the two parties implicated defied the law and order, and decency of the village of Sparta, and the defendant himself was so devoid of moral scruples that he flaunted the charms and virtues of his paramour in the very presence of his 14 year old daughter. Their relationship had broken two homes, it caused Dona's husband to abandon her, and the defendant's wife to leave him. The conclusion is irresistible that the statute upon which this prosecution is predicated was designed to prohibit such public scandal, and disgraceful living together of persons of opposite sexes in such notoriously illicit intimacy; that which outrages public decency and has a debasing and demoralizing influence upon society." 319 Ill. App. 409, 416.

In the case at bar, the only evidence supporting defendant's conviction for adultery was the testimony of Milligan and members of her family. She testified that she and defendant had sexual intercourse on more than one occasion during the time in question. Her brother stated that he had seen defendant with his arm around Milligan. Both Milligan's brother and a half sister knew that she had stayed at the Siegle's house. Another half sister testified that defendant had told her about his plans to obtain a divorce. An aunt stated that defendant had visited Milligan while

she lived at the aunt's house. Milligan's father testified that an attorney told him that the attorney had been consulted by defendant about obtaining a divorce and that the sheriff and others knew of the situation. There was also testimony that defendant and Milligan had lived together for a week and a half in January, 1975. The defendant objected to such testimony and his objections were sustained because the charges against defendant stemmed from conduct on or about October 12, 1974.

Thus the evidence shows a situation of serious family concern. The record, however, does not show that defendant's conduct had engendered public scandal, much less that it had even captured public attention. The record is barren of evidence of publicity which could have tended to debase and demoralize defendant's community. Rather than flouting the sanctity of the institution of marriage, defendant had taken steps to obtain a divorce and to become engaged to Milligan.

We find that the State failed to show that defendant's immoral behavior was open and notorious and accordingly we reverse his conviction of adultery.

■■ In light of our holding, we need not consider defendant's remaining contention. We do note that the trial court, in imposing a sentence of 90 days' imprisonment and a $250 fine for the offense of contributing to the sexual delinquency of a child, may have considered defendant's adultery conviction as an aggravating factor. Under the circumstances of this case we are of the opinion that the sentence rendered may be too severe. We therefore remand in order for the trial court to reconsider the sentence imposed.

Defendant's conviction for adultery is reversed.

Defendant's conviction for contributing to the sexual delinquency of a child is affirmed and remanded for resentencing.

KARNS, P. J., and JONES, J., concur.