VICTORIA L. HEWITT, Indiv. and as Mother and Next Friend of Victoria Eve Hewitt *et al.*, Minors, Plaintiff-Appellant, *v.* ROBERT M. HEWITT, Defendant-Appellee.

Fourth District  No. 14548

Opinion filed August 11, 1978.

Burt Greaves, of Champaign, for appellant.

Robert I. Auler, of Auler Law Offices, of Urbana, for appellee.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Plaintiff appeals from the order of the trial court dismissing her complaint which prayed that the court grant to her a just, fair share of the property, earnings, and profits of the defendant, order a proper provision for support and maintenance of plaintiff and their minor children, or, in the alternative, divide the joint tenancy property of the parties and impress a trust on other property acquired through the joint efforts of plaintiff and defendant.

Plaintiff's initial pleading was a complaint for divorce alleging a marriage in Iowa in June 1960, their subsequent cohabitation as husband and wife until September 1975, and the birth of three children. The trial court heard evidence on defendant's motion to dismiss. His memorandum opinion found that plaintiff conceded that there was no marriage ceremony as alleged in the complaint, that the parties had never lived together in the State of Iowa and that there was no common-law marriage which the court might recognize.

The trial court also found that defendant admitted the paternity of the children, that the only question upon that issue was that of child support,

and that it was unnecessary to require a separate action to be brought under the Paternity Act. (Ill. Rev. Stat. 1975, ch. 106 3/4, par. 51 *et seq.*) The court further found that certain property was held in joint tenancy and plaintiff was directed to amend her pleadings to make her complaint more definite and certain as to the nature of the property in joint tenancy.

The order on appeal was directed to an amended count which contained the following allegations: That prior to June 1960, the parties were residents of Illinois attending Grinell College in Iowa, that plaintiff became pregnant, and that on or about such date the defendant told plaintiff that they were husband and wife and that they would thereafter live together as such; that no formal marriage ceremony was necessary and that defendant stated that he would thereafter share his life, future earnings, and property with plaintiff; that the parties immediately announced their marriage to their respective parents, thereafter lived together as husband and wife and that in reliance upon defendant's representations she devoted her entire efforts to assisting in the completion of defendant's professional education and the establishing of his successful practice of pedodontia; that such professional education was assisted financially by the parents of plaintiff; that plaintiff assisted defendant in the practice of his profession by virtue of her special skills and that although plaintiff was given a payroll check for such services the monies were placed in the family funds and used for family purposes. It is further alleged that defendant is a successful professional man with an income of $80,000 per year who has acquired property both in joint tenancy and as separate property, and that the assistance and encouragement and industry of the plaintiff were directed to the acquiring of such property and professional pecuniary advancement of defendant.

It is alleged that plaintiff furnished defendant with every assistance that a wife and mother could give, including social activities designed to enhance defendant's social and professional reputation. Plaintiff further alleges that for 17 years defendant represented to her and to all the world that they were husband and wife and that she has relied upon such representations to her detriment, and that she should be entitled to equal division of the property whether in joint tenancy or in the sole name of defendant.

It is alleged that the court should enforce the implied contract evidenced by the conduct of the parties; that plaintiff relied upon defendant's representation that they were partners within the family relationship; and that defendant knowing that the alleged marriage was not legal nevertheless continued to assure plaintiff that she was his wife and continued to hold himself out as husband of the plaintiff to secure the benefits to be gained through the services, devotion, thrift, and industry

of plaintiff invested in the family relationship so that the property of the defendant should be impressed with a trust to protect plaintiff from the frauds and deception of the defendant.

The order of the trial court on appeal found that the law and public policy of the State requires the claims of plaintiff to be based upon a valid legal marriage; that there was no such legal marriage shown by the facts alleged; and that the allegations failed to state a cause of action recognized in Illinois upon a theory of implied contract, joint venture, or partnership. The order does not expressly speak to the allegation of an express oral contract, but we will presume that the ruling would be the same.

In argument, defendant has referred to plaintiff as a meretricious spouse living in a meretricious relationship. The adjective should be examined in its precise meaning, *i.e.*, "Of, pertaining to, befitting or of a character of a harlot" (Shorter Oxford English Dictionary (1934)), or, "Of or relating to a prostitute" (Webster's New Collegiate Dictionary (1973)). Neither is it correct to refer to plaintiff as a concubine which is defined as "1: a woman living in a *socially recognized* state of concubinage * * * MISTRESS." (Emphasis supplied.) Webster's New Collegiate Dictionary (1973).

The well-pleaded facts contradict the terms in showing that the parties lived, and for a time, enjoyed a most conventional, respectable and ordinary family life. The single flaw is that for reasons not explained, the parties failed to procure a license, a ceremony, and a registration of a marriage. Upon the present pleading nothing discloses a scandal, an affront to family living or society, or anything other than that the parties were known as husband and wife. We refuse to weigh defendant's claim in the context of such epithets.

All parties agreed that no court of review in Illinois has examined claims arising under comparable circumstances. See cases collected in Annot., 31 A.L.R. 2d 1255 (1953), and its supplements.

Defendant argues that plaintiff's claims must be defeated upon the grounds of public policy in that all rights must rest upon a valid marriage contract within the provisions of the Illinois Marriage and Dissolution of Marriage Act, effective October 1, 1977. Section 102 of that Act (Ill. Rev. Stat. 1977, ch. 40, par. 102) states that:

"[I]ts underlying purposes * * * are to:

(1) provide adequate procedures for the solemnization and registration of marriage;

(2) strengthen and preserve the integrity of marriage and safeguard family relationships; * * *."

The provisions of the Act do not undertake to prohibit cohabitation without such solemnization of marriage. Its section 201 provides:

"A marriage between a man and a woman licensed, solemnized and registered as provided in this Act is valid in this State."

Upon the facts pleaded, plaintiff has for more than 15 years lived within the legitimate boundaries of a marriage and family relationship of a most conventional sort. The record does not suggest that the parties' relationship came within the proscription of prohibited marriages. Ill. Rev. Stat. 1977, ch. 40, par. 212.

Public policy suggests inquiry within the criminal statutes. The Criminal Code of 1961, article 11, section 11—7, makes adultery an offense. (Ill. Rev. Stat. 1977, ch. 38, par. 11—7.) Since neither party has had a living spouse, that statute has no significance. The statute defines as an offense:

"(a) Any person who cohabits or has sexual intercourse with another not his spouse commits fornication if the behavior is open and notorious." (Ill. Rev. Stat. 1977, ch. 38, par. 11—8(a).)

The Committee Comments state that the basic premise of the article which includes the statute penalizing fornication includes as its purpose:

"* * * (3) protection of the public from open and notorious conduct which disturbs the peace, tends to promote breaches of the peace, or openly flouts accepted standards of morality in the community; and, (4) protection of the institution of marriage and normal family relationships from sexual conduct which tends to destroy them. * * *." (Ill. Ann. Stat., ch. 38, art. 11, Committee Comments, at 290 (Smith-Hurd 1972).)

Such Comments further state:

"The Article is not intended to proscribe any sexual conduct between consenting adults unless such conduct adversely affects one of the key interests sought to be protected." (Ill. Ann. Stat., ch. 38, art. 11, Committee Comments, at 291 (Smith-Hurd 1972).)

In *People v. Cessna* (1976), 42 Ill. App. 3d 746, 356 N.E.2d 621, the court had occasion to delimit behavior which was "open and notorious." The court stated:

"Clearly the adulterous conduct proscribed by this provision is not that which is essentially private or discreet. (*People v. Potter,* 319 Ill. App. 409, 49 N.E.2d 307.) Behavior which is 'open and notorious' by definition means that such behavior is prominent, conspicuous and generally known and recognized by the public. The prohibition of open and notorious adultery is meant to protect the public from conduct which disturbs the peace, tends to promote breaches of the peace, and openly flouts accepted standards of morality in the community. (See Ill. Ann. Stat., ch. 38, par. 11—1 *et seq.,* Committee Comments—1961, at 290 (Smith-Hurd (1972).) What is of marked interest is the scandalous effect of

the behavior and its affront to public decency and the marital institution. Notoriety of the adultery must extend not only to the sexual intercourse or the cohabitation but also to the fact of the absence of a marital relationship between the parties where one party is known to be married. * * *." (42 Ill. App. 3d 746, 749, 356 N.E.2d 621, 623.)

Within such standards the facts pleaded do not suggest a criminal offense which offends public policy. Rather, the family relationship was conventional without an open flouting of accepted standards. From the facts pleaded and the evidence heard it may reasonably be inferred that the want of a marriage ceremony was first disclosed by defendant's motions to plaintiff's complaint for divorce.

Plaintiff has alleged that she was induced and persuaded to live and cohabit with the defendant as an adult by reason of his assurances that a marriage ceremony was not required, and the representations and promises that they would live as husband and wife sharing the benefits resulting from his professional career which she aided through procuring financial assistance, as well as her role and services as companion, housewife and mother. The practical question is whether she should be denied all claims by reason of the absence of a marriage ceremony.

Plaintiff urges that this court adopt the rationale of the Supreme Court of California stated in its well-publicized opinion, *Marvin v. Marvin* (1976), 18 Cal. 3d 660, 557 P.2d 106, 134 Cal. Rptr. 815. Under the name Michelle Marvin that plaintiff alleged that she had lived with defendant for seven years without a marriage ceremony under an express oral contract that they would share equally in any property accumulated by their efforts while living together; that they should be known as husband and wife; that defendant would provide for plaintiff's needs for life and that plaintiff would forego her career to devote her time to defendant as a companion, homemaker and cook, and that she had so performed her duties until defendant forced her to leave. Plaintiff prayed a declaratory judgment to determine her contract and property rights and the declaration of a constructive trust in one-half of the property accumulated while the parties lived together. Of the cases examined, *Marvin* includes facts most clearly comparable to those present here, although Marvin was known to be married to another during the first three years of the relationship with Michelle.

That trial court entered a judgment for defendant upon the pleadings without assigning reasons.

As here, Marvin argued that the character of their relationship was immoral and violated public policy. While no courts of review in Illinois have considered such relationship, California courts had examined a number of instances concerning agreements to share accumulated

property by unmarried persons cohabiting together. Reviewing such cases, the court said:

"Although the past decisions hover over the issue in the somewhat wispy form of the figures of a Chagall painting, we can abstract from those decisions a clear and simple rule. The fact that a man and woman live together without marriage, and engage in a sexual relationship, does not in itself invalidate agreements between them relating to their earnings, property, or expenses. Neither is such an agreement invalid merely because the parties may have contemplated the creation or continuation of a nonmarital relationship when they entered into it. Agreements between nonmarital partners fail only to the extent that they rest upon a consideration of meretricious sexual services. Thus the rule asserted by defendant, that a contract fails if it is 'involved in' or made 'in contemplation' of a nonmarital relationship, cannot be reconciled with the decisions." 18 Cal. 3d 660, 670, 557 P.2d 106, 113, 134 Cal. Rptr. 815, 822.

The court continued:

"The principle that a contract between nonmarital partners will be enforced unless expressly and inseparably based upon an illicit consideration of sexual services not only represents the distillation of the decisional law, but also offers a far more precise and workable standard than that advocated by defendant." 18 Cal. 3d 660, 672, 557 P.2d 106, 114, 134 Cal. Rptr. 815, 823.

The court said that the authorities demonstrate:

"* * * that a contract between nonmarital partners, even if expressly made in contemplation of a common living arrangement, is invalid only if sexual acts form an inseparable part of the consideration for the agreement. In sum, a court will not enforce a contract for the pooling of property and earnings if it is explicitly and inseparably based upon services as a paramour. * * *." 18 Cal. 3d 660, 672, 557 P.2d 106, 114, 134 Cal. Rptr. 815, 823.

The court concluded:

"So long as the agreement does not rest upon illicit meretricious consideration, the parties may order their economic affairs as they choose, and no policy precludes the courts from enforcing such agreements." 18 Cal. 3d 660, 674, 557 P.2d 106 116, 134 Cal. Rptr. 815, 825.

Defendant argues that plaintiff has engaged in improper conduct, and in effect, should be punished by denial of relief. This argument may be answered as in *Marvin*:

"Indeed, to the extent that denial of relief 'punishes' one partner, it necessarily rewards the other by permitting him to retain a

disproportionate amount of the property. Concepts of 'guilt' thus cannot justify an unequal division of property between two equally 'guilty' persons." (18 Cal. 3d 660, 682, 557 P.2d 106, 121, 134 Cal. Rptr. 815, 830.)

He also argues that any claim of plaintiff to equity should be barred by the doctrine of "unclean hands." However, as stated in *West v. Knowles* (1957), 50 Wash. 2d 311, 316, 311 P.2d 689, 692-93:

"Under such circumstances [the dissolution of a nonmarital relationship], this court and the courts of other jurisdictions have, in effect, sometimes said, 'We will wash our hands of such disputes. The parties should and must be left to their own devices, just where they find themselves.' To me, such pronouncements seem overly fastidious and a bit fatuous. They are unrealistic and, among other things, ignore the fact that an unannounced (but nevertheless effective and binding) rule of law is inherent in any such terminal statements by a court of law.

The unannounced but inherent rule is simply that a party who has title, or in some instances who is in possession, will enjoy the rights of ownership of the property concerned. The rule often operates to the great advantage of the cunning and the shrewd, who wind up with possession of the propety, or title to it in their names, at the end of a so-called meretricious relationship. So, although the courts proclaim that they will have nothing to do with such matters, the proclamation in itself establishes, as to the parties involved, an effective and binding rule of law which tends to operate purely by accident or perhaps by reason of the cunning, anticipatory designs of just one of the parties."

Here, plaintiff prays relief not only under allegations of an express oral contract, but also seeks recovery upon allegations supporting implied contract, equitable relief upon allegations of misrepresentation, and as constructive trust. Upon determination that plaintiff states a cause of action upon an express oral contract we observe no reasons of public policy to conclude that other forms of relief framed upon appropriate allegations of fact and proved before the trier of fact should not be available to plaintiff.

In *Marvin*, the court unanimously determined that the plaintiff's complaint stated a cause of action upon an express contract. The court continued, with one dissent expressing belief that it was unnecessary, to examine in *dicta* those other forms of relief which might be available to plaintiff and upon consideration of the existing authorities in that State said:

"But, although parties to a nonmarital relationship obviously cannot have based any expectations upon the belief that they were

married, other expectations and equitable considerations remain. The parties may well expect that property will be divided in accord with the parties' own tacit understanding and that in the absence of such understanding the courts will fairly apportion property accumulated through mutual effort. We need not treat nonmarital partners as putatively married persons in order to apply principles of implied contract, or extend equitable remedies; we need to treat them only as we do any other unmarried person." (18 Cal. 3d 660, 682, 557 P.2d 106, 121, 134 Cal. Rptr. 815, 830.)

And continued:

"We conclude that the judicial barriers that may stand in the way of a policy based upon the fulfillment of the reasonable expectations of the parties to a nonmarital relationship should be removed. As we have explained, the courts now hold that express agreements will be enforced unless they rest on an unlawful meretricious consideration. We add that in the absence of an express agreement, the courts may look to a variety of other remedies in order to protect the parties' lawful expectations.

The courts may inquire into the conduct of the parties to determine whether that conduct demonstrates an implied contract or implied agreement of partnership or joint venture (see *Estate of Thornton* (1972) 81 Wash.2d 72, 499 P.2d 864), or some other tacit understanding between the parties. The courts may, when appropriate, employ principles of constructive trust (see *Omer v. Omer* (1974), 11 Wash. App. 386, 523 P.2d 957) or resulting trust (see *Hyman v. Hyman* (Tex. Civ. App. 1954) 275 S.W.2d 149). Finally, a nonmarital partner may recover in quantum meruit for the reasonable value of household services rendered less the reasonable value of support received if he can show that he rendered services with the expectation of monetary reward." 18 Cal. 3d 660, 684, 557 P.2d 106, 122-23, 134 Cal. Rptr. 815, 831-32.

We conclude that the reasoning followed in *Marvin* is particularly persuasive upon the allegations here pleaded wherein plaintiff has alleged facts which demonstrate a stable family relationship extending over a long period of time.

It would be superficial to conclude that by this determination this court has revived or restored a form of common law marriage now forbidden by statute. It is apparent that the matters to be alleged and the facts to be proved here are substantially, if not enormously, different.

The value of a stable marriage remains unchallenged and is not denigrated by this opinion. It is not realistic to conclude that this determination will "discourage" marriage for the rule for which defendant contends can only encourage a partner with obvious income-

producing ability to avoid marriage and to retain all earnings which he may acquire. One cannot earnestly advocate such a policy.

It has been documented that:

"The 1970 census figures indicate that today perhaps eight times as many couples are living together without being married as cohabited ten years ago." Comment, *In re Cary: A Judicial Recognition of Illicit Cohabitation*, 25 Hastings L.J. 1226 (1974).

It has been concluded that reasons for such way of life include the economic forces of loss of pension or welfare rights and the impact of income taxes, as well as personal reasons. While the court cannot now predict what the evidence will prove, the courts should be prepared to deal realistically and fairly with the problems which exist in the life of the day.

We conclude that upon the record it neither can be said that plaintiff participated in a meretricious relationship nor that her conduct so affronted public policy that she should be denied any and all relief.

The judgment of the trial court is reversed and the cause remanded for further proceedings not inconsistent with the views expressed.

Reversed and remanded.

MILLS, P. J., and CRAVEN, J., concur.