201 N.J. Super. 55 (1985)
492 A.2d 698
YVONNE ZARAGOZA IMPROPERLY PLEADED AS YVONNE ZARAGOSA, PLAINTIFF,
v.
EDWARD A. CAPRIOLA, JR., M.D., DEFENDANT.
Superior Court of New Jersey, Chancery Division Family Part, Bergen County.
Decided February 21, 1985.
*58 Donald L. Garber for plaintiff.
Hal D. Pugach for defendant.

OPINION
KRAFTE, J.S.C.
While there are several reported cases in New Jersey dealing with support between unmarried cohabitants, none has addressed the complexities involving an application for support of a natural child born to the parties and for a cohabiting child born to one of the parties by a previous marriage, combined with the issue of "palimony". This Court now addresses such a situation.
By way of motion, plaintiff seeks an award of pendente lite maintenance for herself, a natural child of the parties, and a child born to her of another marriage. Defendant counters with a request that plaintiff and her child by a previous marriage be directed to vacate defendant's home, where all persons presently reside.
A developmental history is necessitated. The parties became acquainted in January 1975, when plaintiff became employed in defendant's medical practice. During the summer of 1978, plaintiff and defendant began dating.
*59 In or about November of that year, plaintiff was granted a divorce from her husband and was awarded custody of the child born of the marriage, Omayra Cruz. In July 1982, the parties became aware that plaintiff was pregnant with defendant's child, and they began residing together in Secaucus, New Jersey, along with plaintiff's child, Omayra. In September 1982, their child, Edward A. Capriola III, was born. In October 1982, the parties and children moved to Saddle River, New Jersey. They resided there until approximately June 20, 1983, when they separated, plaintiff moving to Florida and taking both children with her. In July 1984, some thirteen months later, plaintiff and the children returned to the Saddle River residence. In September, discord again arose between the parties, which eventually culminated in plaintiff filing suit. These motions resulted.

RE: EDWARD A. CAPRIOLA, III
This Court will first address the issues related to the parties' natural child, Edward A. Capriola III. Plaintiff requests that defendant provide the following: pendente lite support, life insurance with Edward Capriola III as designated beneficiary, health and medical insurance, plus payment of all uncovered and unreimbursed medical and dental expenses on behalf of the child.
Defendant does not dispute that he is Edward III's father, and that as such, he has an obligation to support his child. Based upon all financial data disclosed in the motion papers, including case information statements, this Court directs that defendant pay to the plaintiff the sum of $110.00 per week through the Bergen County Probation Department as and for support of his child, Edward A. Capriola III, said payments to be retroactive to the initial return date of these motions. This Court further directs that defendant maintain life insurance, with Edward III designated as beneficiary, in a sum equal to that of defendant's two children by a previous marriage who *60 are presently listed as beneficiaries on such life insurance. Defendant is also directed to maintain Blue Cross/Blue Shield (or its equivalent), major medical and dental insurance covering Edward III. Defendant shall provide proof of such life and health insurance coverage to plaintiff's attorney within thirty (30) days. This Court further directs that defendant be responsible for any uncovered or unreimbursed medical and dental expenses on behalf of Edward III. In the event plaintiff expects to incur such expense in excess of $40.00, plaintiff shall provide 20 days' notice to defendant by certified mail return receipt requested. If there is no notice, defendant shall not be responsible, except in cases of genuine emergency.

RE: OMAYRA CRUZ
Plaintiff's next request is that defendant support Omayra Cruz, her child by a prior marriage. In addition, plaintiff requests that defendant maintain health/major medical insurance on behalf of Omayra, and that defendant be responsible for her uncovered or unreimbursed medical and dental expenses. In support of these requests, plaintiff asserts that defendant told her that he would support Omayra, and that plaintiff should not pursue any request for child support or arrears from her former husband. Plaintiff further asserts that Miller v. Miller, 97 N.J. 154 (1984), governs the present situation. Defendant, on the other hand, contends that he did not make any such statements or commitments to plaintiff, but that he merely gratuitously supported plaintiff's child. Defendant further asserts that Miller is totally inapplicable to this situation.
Without doubt, Miller established the parameters for step-parent support obligations, based upon the doctrine of equitable estoppel, but admonished "that this doctrine should be applied with caution." Id. at 167.
"Step-parent" must be defined. As applies to the instant case, it can be defined as the husband of one's mother by *61 virtue of a marriage subsequent to that of which the person spoken of is the offspring. Sharp v. Bor. of Vineland, 14 N.J. Misc. 256, 183 A. 911 (Salem Cty. Ct. of Common Pleas, 1936.)
Two postulates surface:

Number One: If defendant is not, in fact, a step-father, does Miller apply?

Number Two: If Miller does apply to non-married co-habitants, has plaintiff established, pendente lite, that the parameters for inclusion have been met?
This Court recognizes that the sanctity of marriage has been socially eroded in the recent past, and legal rights have been established for participants in relationships which themselves have not always been socially acceptable. This Court is now asked to make further incursions into the social order by extending financial responsibility from one unmarried cohabitant to the unrelated child of the other unmarried cohabitant.
It is uncontroverted that the parties in this case have never married. It follows as elementary that defendant has never actually attained the status of Omayra's stepfather.
What may be said for a married step-parent cannot be said of unmarried cohabitants, one of whom may have a child by a stranger. If, as Miller admonishes, imposition of support obligations on a step-parent must be done with caution, what restrictive bounds must be placed around imposition of such obligations upon one unmarried cohabitant?
To reach out to impose financial responsibilities as requested would be to extend the Miller doctrine beyond the bounds of reasonableness and to make a mockery of the institution of marriage and interpersonal relationships. This Court refuses to recognize the existence of a support obligation running from defendant to plaintiff's daughter, although they did reside together for a limited time, and defendant did in fact contribute to her support in the past.
The institution of marriage is not yet dead. This Court will not contribute to its demise by imposing the obligations requested. Consequently, it is unnecessary for this Court to address the issue of whether plaintiff has, in fact, established *62 that the parameters set out in Miller have been met in this case.

RE: PLAINTIFF
Lastly, plaintiff seeks pendente lite support for herself, payment of all operating expenses of the Saddle River residence, payment of all expenses of the automobile operated by plaintiff, procurement of life insurance with plaintiff as beneficiary, health/medical insurance for plaintiff, payment of plaintiff's uncovered or unreimbursed medical and dental expenses, and, of course, counsel fees and costs.
In support of these requests, plaintiff asserts that defendant continually stated he wished to marry her and provide a family for her daughter and their son, and that he showered her with lavish gifts, including two fur coats, designer clothing, an automobile and expensive jewelry. Plaintiff also states that defendant gave her two engagement rings, the first of which plaintiff sold during the parties' separation between June 1983 and July 1984. However, plaintiff claims that defendant subsequently informed her of his desire to terminate their relationship. Defendant responds that he has always been willing to enter into a marital relationship with plaintiff, and, in fact, still desires to do so. Defendant further asserts that it is plaintiff, not he, who does not wish to marry.
This Court initially notes that plaintiff relies upon the fact that defendant stated on various occasions that he wished to marry her, and that he subsequently expressed a desire to end their relationship. Relief predicated upon a promise of marriage has been barred since 1935 by the Heart Balm Act, N.J.S.A. 2A:23-1 et seq., which provides as follows:
The rights of action formerly existing to recover sums of money as damage for the alienation of affections, criminal conversation, seduction or breach of contract to marry are abolished from and after June 27, 1935. [Emphasis supplied.]
The primary aim of the Heart Balm Act barring suit based upon breach of promise to marry was to do away with excessive *63 claims, coercive by their very nature and, frequently, fraudulent in nature. Kozlowski v. Kozlowski, 164 N.J. Super. 162, aff'd. 80 N.J. 378 (1979). This Court does not find that plaintiff's claim for support is excessive or fraudulent. However, based upon the foregoing, this Court finds that any claim predicated upon defendant's alleged failure to live up to his promises of marriage must necessarily fail.
Neither is plaintiff entitled to alimony or equitable distribution. Alimony may be awarded in actions for divorce or nullity, and equitable distribution is awarded only in actions for divorce. N.J.S.A. 2A:34-23 et seq.
Although plaintiff is barred from obtaining relief based upon the foregoing analyses, there are various cases in New Jersey wherein relief has been granted to an unmarried cohabitant. In the leading case of Kozlowski v. Kozlowski, supra, 80 N.J. 378, the parties lived together for a total of 15 years continuously, except for two brief separations. Subsequently, defendant acquired another romantic interest, and plaintiff brought an action to recover her share of assets which defendant accumulated during their relationship, the reasonable value of services rendered for his benefit, and future support. The Court held that an agreement between adult unmarried partners, whereby plaintiff agreed to live with defendant and run his household and defendant said he would provide for her for the rest of her life, was enforceable, since the agreement was not explicitly and inseparably founded on sexual services, since the parties' cohabitation subsequent to their agreement, could not be termed "meretricious", and since the parties relationship was not tainted by the fact that defendant was married at that time. The Court further held that an agreement between adult parties living together is enforceable to the extent it is not based on a relationship proscribed by law, or on a promise to marry. Id. at 385-387.
In Crowe v. DeGioia, 90 N.J. 126 (1982), the Court held that, while neither permanent nor temporary alimony could be *64 awarded in a suit to enforce an alleged agreement between unmarried cohabitants, the record below supported issuance of preliminary injunctive relief to an unmarried cohabitant who was threatened with the loss of her home of 14 years, and of her only means of support. Id. at 127. There, the Court below found that defendant declared to plaintiff that "he would take care of her and support her for the rest of her life, and that he would share with her his various assets." Id. at 129. It is also worthy to note that the parties' relationship in Crowe, extended over some 20 years.
This Court is not unaware of the prevalence of non-marital relationships in today's society, and the limited social acceptance of them. Many people simply choose to live together without benefit of marriage. Others reside together on a "trial basis", in order to attempt to ensure their compatibility and the future success of their marriage.
However, this Court notes that Judge Halpern carefully pointed out in Kozlowski v. Kozlowski, supra, 80 N.J. at 387, "... our decision today has not judicially revived a form of common-law marriage which has been proscribed in New Jersey since 1939 by N.J.S.A. 37:1-10." Id. at 387. The Court also cited Hewitt v. Hewitt, 62 Ill. App.3d 861, 20 Ill.Dec. 476, 380 N.E.2d 454, and agreed with the philosophy expressed therein:
We conclude that the reasoning in Marvin [v. Marvin, 18 Cal.3d 660, 134 Cal. Rptr. 815, 557 P.2d 106 (1976)] is particularly persuasive upon the allegations here pleaded wherein plaintiff has alleged facts which demonstrate a stable family relationship extending over a long period of time. [Emphasis supplied.]
This Court notes that the Supreme Court in Kozlowski was faced with a fourteen-year cohabitation, and in Crowe with a twenty-year cohabitation. Clearly, the duration of the parties' relationship was a major factor the Court considered in reaching its determination in both cases. This Court finds that the parties to this action cohabitated for some 11 months, then separated. Said separation lasted approximately one full year, followed by a reconciliation which endured for two or three *65 months. In light of the parties' statements, and their acts and conduct in light of the subject-matter and the surrounding circumstances, this Court finds that no agreement existed between the parties, either express or implied. Furthermore, this Court is unwilling to extend the rationale of Kozlowski or Crowe to the present matter. To do so would significantly close the gap between the married and unmarried, and expand, in an unwarranted fashion, the intent of the Supreme Court. Therefore, plaintiff's motion with respect to support, insurance coverage, health/major medical insurance, payment of unreimbursed medical and dental expenses, payment of operating expenses of the Saddle River residence, payment of all plaintiff's automobile expenses, and payment of counsel fees and costs, is denied.